Samuel M. Gold, J.
In this action plaintiff seeks to compel defendant National Computer Analysts, Inc. (“NCA”) to transfer 34,960 shares of his approximately 55,000 shares of its stock by removing the restrictive legend thereon, and damages as well as .reasonable counsel fees because of NCA’s unreasonable refusal to transfer said stock.
Plaintiff became connected with NCA in July, 1962 and acquired in 1962 and 1963 the shares, which as a result of subsequent recapitalizations and stock splits, make up the subject shares. He left the employ of NCA on December 31, 1968 to join a newly formed company.
NCA is now a public company, its stock being traded in the “ over-the-counter ” market. Plaintiff’s shares were investment or restricted stock, bearing the following legend: “ The *607 shares represented in this certificate have not been registered under the Securities Act of 1933. The shares have been acquired for investment and may not be pledged or hypothecated, and may not be sold or transferred in the absence of an effective registration statement for the shares under the Securities Act of 1933, or an opinion of counsel to the company that registration is not required under said Act. ’ ’
Both parties concurred in the court’s view that NCA’s counsel could not “unreasonably withhold” his opinion approving transfer of a shareholder’s restricted stock.
In accordance with the established practice in this field, plaintiff applied on March 26, 1969 to the Securities and Exchange Commission for what is known as a “no action ’’ letter. This is a staff advisory letter by the commission’s Division of Corporate Finance to the effect that under a described state of facts the staff would recommend that the commission take ‘1 no action ’ ’ if the transaction took place without the filing of a registration statement. While a “ no action ” letter merely represents a recommendation and is not a formal administrative act of the commission, NCA’s counsel and the expert witnesses for both sides all agreed that they knew of no instance in the entire record of the commission of action, whether injunctive or criminal, being taken after issuance of a “ no action ” letter or of any issuer corporation being subjected to civil liability by others, such as a purchaser of the securities involved, as a result of transferring shares in reliance on a “ no action ’ ’ letter.
Plaintiff obtained a “ no action ’ ’ letter on May 28, 1969. The court finds that plaintiff’s statement of the facts and circumstances in his application to the commission is true and that there was no valid basis for NCA’s subsequent and repeated attempts to raise such question for reconsideration by the commission.
On June 6,1969, plaintiff, enclosing copies of the “ no action ” letter, requested NCA and its transfer agent to issue certificates for the 34,960 shares without the restrictive legend. NCA and its transfer agent referred the matter to NCA’s counsel. While, in view of the statement in the 11 no action ’ ’ letter that the “ matter is not free from doubt ”, there may have been some justification for NCA’s counsel initially seeking clarification from the commission, there was none for the subsequent attempts up to and even during the trial to obtain actually a rescinding of the ‘‘ no action ’ ’ letter.
There was no reasonable basis for NCA’s counsel withholding his opinion approving transfer of plaintiff’s shares. The “ no *608 action ” letter was confirmed in each of the commission’s responses to his various communications.
The only cases cited by the parties which appear to have dealt with this question have held that corporations are required to transfer shares when a “no action” letter is submitted along with the restricted shares (Kanton v. United States Plastics, 248 F. Supp. 353; Friedman v. Chemical Bank N. Y. Trust Co., N. Y. L. J., April 13, 1965, p. 14, col. 7; Donlon Ventures v. Avien, Inc., N. Y. L. J., July 10, 1967, p. 10, col. 4).
There is no substance to NCA’s wholly unsupported contention that, even after obtaining confirmation of the ‘‘ no action ” letter, it was obliged to take reasonable .steps to satisfy itself that it was not participating in a criminal act in permitting a transfer of shares not registered under the Securities Act (U. S. Code, tit. 15, § 77a et seq.). The cited decisions clearly indicate that under these circumstances there is no provision of the act that would make NCA liable to criminal or civil action, plaintiff being the only party subject to such future liability if found to be warranted. With respect to the penalties prescribed for willful violation in section 24 of the act (U. S. Code, tit. 15, § 77x), there is no possibility of such action against NCA by the commission in view of the “no action” letter and its confirmation to NCA in response to NCA’s request for clarification. With respect to the civil liability of seller to purchaser of such stock provided for in section 12 (U. S. Code, tit. 15, § 771), NCA could not possibly be held liable, since it would have acted under these circumstances merely as a conduit for the transfer of the shares without participating in any manner in the sale.
NCA’s own acts belie its argument. NCA has a relatively large amount of restricted stock. It permitted other restricted stock bearing the same legend as plaintiff’s, including 9,000 shares owned by the chairman of the board, to be transferred free of the legend for the purpose of sale, even without any “no action” letter, merely upon the opinion of its counsel. During the period of initial clarification of plaintiff’s “no action ” letter sought by NCA, the parties made arrangements for transfer of 3,500 shares which plaintiff desired to sell immediately. NCA’s counsel thereupon rendered a written opinion to the transfer agent approving such transfer. He stated in a letter to plaintiff’s counsel that he was relying upon the latter’s opinion that the sale of 3,500 shares did not constitute a violation of the Securities Act “ aé well as relying on the SEC’s letter of May 28, 1969.” Later on, while NCA’s counsel was continuing to press the commission, in effect, to recon *609 sider its position, he was negotiating with plaintiff with respect to a deal whereby plaintiff would obtain transfer free of the legend of 15,000 shares for use as collateral on a bank loan with the remainder of his shares being bought by NCA under a two-year option. Counsel testified that he “ was willing to go along with that ’ ’ and, in fact, submitted it for the approval of the board of directors. However, the arrangement fell through at about the time that plaintiff, having reason to believe that NCA’s counsel was engaging in a variety of delaying tactics, commenced this action on November 24, 1969.
It is quite clear that NCA’s counsel has unreasonably withheld his opinion regarding the transfer of the 34,960 shares, for which a “no action ’’ letter was issued by the commission. NCA has failed to show any reasonable basis or give any valid reason for refusing to transfer such shares. Accordingly, as a matter of law, plaintiff is entitled to the mandatory injunction requested, directing NCA to transfer his 34,960 shares by removing the restrictive legend thereon.
In determining damages it is necessary first to fix the date when NCA should have transferred these shares. As previously noted, there was a period of time after plaintiff’s demand during which the parties agreed concerning the transfer of 3,500 shares and plaintiff’s counsel wrote a letter stating that such transaction ‘ ‘ will be without prejudice to your obtaining further clarification from the Securities and Exchange Commission of their no action letter dated May 28, 1969”, which contained the statement that ‘ ‘ the matter is not free from doubt.” Thereafter, on July 22, 1969, plaintiff’s counsel requested that the letter seeking clarification be sent without further delay. NCA sent such letter on July 24, 1969 but the SEC response confirming the “no action” letter was not received until September 23, 1969.
That appears to be the earliest date when NCA was chargeable with the duty of transferring these shares. The measure of damages is the difference between the market price at such time or within such reasonable time thereafter as the sale might have been consummated and the market price at the time of trial. It is a fortuitous circumstance for NCA that there is no difference in price, the shares having sold since September 23, 1969 and, in fact, for some days prior thereto, for approximately the same price as the price at time of trial. It is for that reason alone that damages are not awarded, since NCA had no right or reason to refuse to transfer these shares after receiving confirmation of the ‘ ‘ no action ’ ’ letter.
*610 Plaintiff has requested an award of counsel fees. Though the court is sympathetic to such request in view of the persistent refusal of NO A to transfer even after confirmation, no authority has been cited for awarding such fees in this type of action. The Federal cases cited (Vaughan v. Atkinson, 369 U. S. 527, 530; Bell v. School Bd. of Powhatan County, 321 F. 2d 494, 500) point out that such award, not included in ordinary taxable costs, is allowable only in extreme cases as part of the historic equity jurisdiction of the Federal courts. The New York cases cited (Fittipaldi v. Legassie, 18 A D 2d 331, 338; Cooper v. Weissblatt, 154 Misc. 522) involved specific types of situations authorizing such an award. In Fittipaldi (supra) counsel fees were allowed in a class action where as a result of litigation benefits were obtained for the general membership. In Cooper (supra) counsel fees were allowed for plaintiff’s expenses in defending a prior action brought as a result of defendant’s wrongful act.