C. C. & T. Construction Co., Inc. *vs.* Coleman Bros. Corporation & another.[1]

Suffolk. November 15, 1974. — June 27, 1975.

Present: Hale, C.J., Rose, Keville, Grant, & Armstrong, JJ.

*Contract,* Building contract, Performance and breach, Implied contract. *Evidence,* Presumptions and burden of proof. *Damages,* Conversion. *Conversion.*

Where a subcontractor ceased performing work as a result of design changes on the project and was later directed by the contractor to leave the job and remove its materials from the construction site because it allegedly was in default of its subcontract, the subcontractor was not entitled to recover the value of the labor and materials supplied in the absence of evidence that it had substantially performed its contract and had a good faith intention of completely performing its contract up to the time further performance was prevented by the contractor's termination. [375-376]

Where a subcontractor failed to remove its materials from a construction site after it was directed to do so by the contractor because it

---

[1] American Employers' Insurance Company, which was surety on the defendant Coleman's bond required under G. L. c. 149, § 29.

3 Mass. App. Ct. 372                                           373

C. C. & T. Construction Co., Inc. *v.* Coleman Bros. Corp.

was allegedly in default of its subcontract, the contractor's removal of the goods to its own yard was not wrongful but the subcontractor would be entitled either to the fair market value of the materials, if they had been converted by the contractor, or to their return in specie with an allowance to the contractor for the reasonable cost of removing the goods to its yard. [376-377]

BILL IN EQUITY filed in the Superior Court on April 28, 1967.

The suit was heard by *Abrams, J.,* on a master's report.

*Christian M. Hoffman (Richard C. Coyle* with him) for the plaintiff.

*Walter J. Connelly* for the defendants.

ARMSTRONG, J.   The plaintiff appeals from a final decree[2] dismissing its bill, brought under G. L. c. 149, § 29, as amended through St. 1964, c. 609, §§ 4-5, to collect a balance alleged to be due under a subcontract with the defendant Coleman Bros. Corporation (Coleman), the general contractor, whereby the plaintiff agreed to supply all labor and materials in building a sewer connector tunnel in accordance with specifications furnished by the Metropolitan District Commission (M.D.C.). The specifications called for a horseshoe, or U-shape, tunnel, but left design details and method of installation to the subcontractor. A master found that the plaintiff completed its design for the tunnel, secured the approval of the M.D.C., and ordered the required materials, including specially fabricated materials valued at $25,876.62.[3] The tunnel was to be 290 feet long.

Work commenced on November 17, 1965. The master found that difficulty was encountered from the outset due

---

[2] Both parties also appealed from the interlocutory decree sustaining one, but not all, of the plaintiff's objections to the master's report, and confirming that report. Except in respect of the master's ambiguous general finding nine, which is without significance on the view we take of the case, these appeals are not argued. Therefore we deem the appeals to be waived.

[3] The trial judge, in sustaining one of the plaintiff's objections to the report, in effect ruled that timely notice of placement of this order, required by G. L. c. 149, § 29, as then in effect, was given. Cf. § 29 as amended by St. 1972, c. 774, § 5. The defendant's appeal from this action has been waived. See fn. 2.

to the soupy condition of the subsoil, which imposed loads that more easily could have been borne by a circular casing rather than one of U-shape.[4] On January 27, 1966, a consultant recommended that a circular casing design be substituted for the original design. The plaintiff stopped work on January 29 when eight feet of the tunnel were in place. It notified Coleman that it would put together a design plan for a circular tunnel, and it submitted such a plan on February 8. Coleman forwarded the plan and an estimate of the extra cost involved to the M.D.C. On February 18 the M.D.C. notified Coleman that it would permit the circular design, but only at the price already agreed upon for the U-shape tunnel. On February 28 Coleman directed the plaintiff to resume tunnel construction "under the terms of your contract", i.e., using the original U-shape design. On March 5 the plaintiff advised Coleman that it would do so, but under protest.

On March 10 and 11 Coleman suggested to the M.D.C. the use of a different method, the "open cut" method, which would eliminate the need for tunnelling altogether. On April 11 the M.D.C. gave its approval. The plaintiff was not told of these discussions.

After January 29, the plaintiff performed no work on the tunnel other than daily inspections and adjustments of jacks which continued sometime into February. On April 22 Coleman notified the plaintiff that it was in default, and directed it to leave the job and to remove any of its materials and property which were at the site. The plaintiff did not remove the uninstalled, specially fabricated materials when it left the job; at some time prior to May 25, Coleman transported those materials to its own yard. On that date, at a meeting between the plaintiff and Coleman, the

---

[4] "A tunnel of general horseshoe design consistent with the specifications . . . could have been furnished and installed, although such design and installation would have required more costly fabrication and additional labor and materials. . . . [B]orings had been made . . . and the results were available on the plans and specifications furnished by the M.D.C. The . . . [plaintiff] did not request or itself make additional borings. There was no evidence that the borings as made were inaccurate."

latter either (the master's report variously expresses the finding) refused to deliver those materials to the plaintiff or refused to make them available to the plaintiff until an overall settlement of all matters in dispute was reached.

The plaintiff is not entitled to recover the value ($38,-624.33) of the labor and materials supplied. The general rule is that a contractor attempting to recover the value of labor and materials has the burden of proving that he has substantially performed his contract and that he had a good faith intention of completely performing. *Bowen* v. *Kimbell*, 203 Mass. 364, 370 (1909). *Divito* v. *Uto*, 253 Mass. 239, 242-243 (1925). *Hayeck Bldg. & Realty Co. Inc.* v. *Turcotte*, 361 Mass. 785, 789-790 (1972). The fact that a plaintiff has been unjustifiably ordered off the job excuses him from proving substantial performance of the entire contract, as was held in *Frank Fitzgerald, Inc.* v. *Pacella Bros., Inc.* 2 Mass. App. Ct. 240 (1974), but there is nothing in that case which suggests that a plaintiff is excused from proving substantial performance and an intention completely to perform up to the date that further performance is prevented by the termination. The absence of any finding that the plaintiff intended completely to perform the contract is fatal to its claim in quantum meruit. *Divito* v. *Uto, supra*, at 243. Similarly, the absence of a finding that the plaintiff was in compliance with the job schedules[5] is decisive, rather than (as the plaintiff argues) the absence of a finding that the plaintiff was in default. Cf. *Nevins* v. *Ward*, 320 Mass. 70, 73 (1946). The burden was on the plaintiff to show that it had performed its contractual obligations and not on the defendant to show that the plaintiff had failed to do so. *George* v. *Goldman*, 333 Mass. 496

---

[5] The subcontract stated: "The Sub-Contractor agrees to proceed with the work promptly and diligently . . . in compliance with the job schedules, and the Sub-Contractor agrees to have all of the work . . . fully and entirely completed so as not to impede progress of project, it being specifically understood and agreed that time is the essence of this agreement." The job schedules are not before us, nor are there any findings relating to the progress of the project other than the work involved in the subcontract in issue here.

376 3 Mass. App. Ct. 372

C. C. & T. Construction Co., Inc. *v.* Coleman Bros. Corp.

(1956). *P. J. Riley & Co.* v. *Aberthaw Constr. Co., ante,* 275, 277 (1975), and cases cited.

Alternatively, the plaintiff argues that it is entitled, on the principle of § 357 (1) (b) of the Restatement of Contracts[6], to recover $25,191.00 as the value, at the contract rate[7], of the unused specially fabricated materials which Coleman retained. Assuming, without deciding, that § 357 (1) (b) states the law of this Commonwealth (see, for an apparent application of this principle, *Bowker* v. *Hoyt,* 18 Pick. 555 [1836]), it is not applicable to this case because (1) Coleman directed the plaintiff to remove the materials from the site when the plaintiff left the job, and (2) Coleman did not thereafter use the materials in this or any other project.

Nevertheless, the materials were the plaintiff's rather than Coleman's. The plaintiff was entitled to have them back. Coleman's removal of the goods to its yard was not wrongful. *Shea* v. *Milford,* 145 Mass. 525 (1888). We cannot be certain from the findings whether Coleman merely refused to deliver the materials to the plaintiff, which would not be a conversion, *Way* v. *Dennie,* 174 Mass. 43 (1899), or refused to make the materials available to the plaintiff upon demand, which would be a conversion. *Joy Stevens of Cal.* v. *Plymouth Finishing Co. Inc.* 355 Mass. 390, 394 (1969). See *Atlantic Fin. Corp.* v. *Galvam,* 311 Mass. 49 (1942).

If the latter is the fact, the plaintiff would be entitled on

---

[6] "(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment... for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach ... if ... (b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred ... retains property received although its return in specie is still not unreasonably difficult or injurious."

[7] Section 357 (3) states: "The measure of the defendant's benefit ... is the amount by which he has been enriched ... unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance ....."

remand to a judgment for the fair market value of the materials at the time of the conversion, *Welsch* v. *Palumbo,* 321 Mass. 399, 403 (1947), with interest from the date of the conversion, *Lawyers Mtg. Investment Corp.* v. *Paramount Laundries, Inc.* 287 Mass. 357, 361 (1934), or, at the plaintiff's election, to their return in specie, G. L. c. 214, § 3, with an allowance to the defendant for the reasonable cost of removing the goods to its yard. See *Plumer* v. *Brown,* 8 Met. 578, 584 (1844). This aspect of the case depends upon clarification of certain findings and, if necessary, further findings as to the fair market value of the materials and the costs, if any, reasonably incurred by the defendant in removing the materials. For this reason the interlocutory decree confirming the master's report and the final decree are vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*