JAMES J. STERANKO vs. INFOREX, INC.
(and two companion cases).

Middlesex.    Suffolk.    May 18, 1979. — October 29, 1979.

Present: KEVILLE, BROWN, & PERRETTA, JJ.

*Damages,* Conversion, Sale of stock. *Evidence*, Relevancy and mate-
riality. *Interest. Practice, Civil,* Failure to make objection, Proceed-
ing after rescript.

Upon remand of a case for a determination of damages resulting from
    the defendant's wrongful refusal to release restrictions on the
    plaintiff's shares of stock, it was within the judge's discretion to
    hold an evidentiary hearing for the purpose of determining what
    constituted a reasonable time in which the plaintiff might have sold
    his shares but for the defendant's refusal to remove the restrictions;
    there was no merit to the defendant's contentions either that the
    plaintiff was bound by his pleadings to the position that he would
    have sold the shares on the day he made written demand for remov-
    al of the restrictions or that under New York law the damages were
    required to be measured from the date of the wrongful refusal.
    [526-530]
Upon remand of a case for a determination of damages resulting from
    the defendant's wrongful refusal to release restrictions on the
    plaintiff's shares of stock, the judge did not err in permitting the
    plaintiff to introduce evidence pertaining to other sales of once
    restricted stock to show what would have been a reasonable time
    in which he might have sold his shares had the restrictions been
    removed. [530-531]
Upon remand of a case for a determination of damages resulting from
    the defendant's wrongful refusal to release restrictions on the
    plaintiff's shares of stock, there was sufficient evidence to warrant
    the finding that seven business days after the defendant's refusal
    to remove the restrictions was a reasonable time in which the plain-
    tiff might have sold his stock had the restrictions been removed.
    [531]
Where there was nothing in an opinion of this court remanding a case
    for a determination of damages to preclude the defendant from
    raising an issue it thought pertinent to the determination, it could

not raise the issue for the first time on appeal from the determination of damages. [532-533]

In an action to recover damages resulting from the defendant's wrongful refusal to remove restrictions from shares of stock purchased by the plaintiff under an employment agreement, the plaintiff was entitled to interest on the damages from the date of the "breach or demand" rather than from the date of commencement of the action. [533-535]

TWO BILLS IN EQUITY filed in the Superior Court on June 16, 1971, and December 9, 1971, respectively.

CONTRACT. Writ in the same court dated November 21, 1973.

Following the decision of this court in 5 Mass. App. Ct. 253, a proceeding to assess damages was heard by *Mitchell, J.*

*Evan Y. Semerjian* for the defendant.

*Edward R. Lev (Edward Woll, Jr.,* with him) for the plaintiff.

KEVILLE, J. These cases involve appeals and cross appeals from an award of damages to the plaintiff James J. Steranko (Steranko) by a Superior Court judge acting on remand of the case after this court reviewed the merits of the underlying dispute between the parties. See *Steranko* v. *Inforex, Inc.,* 5 Mass. App. Ct. 253 (1977). The facts pertaining to this dispute are set out in full in our previous opinion; the following is a summary of the facts relevant to this appeal. In 1968 Steranko, a computer process and packaging engineer, entered into an employment agreement which provided inter alia that he was to be employed by Inforex, Inc. (Inforex), in an "executive position" and that he could purchase Inforex stock subject to the restriction that the shares could not be sold, pledged, or transferred for five years following the date of the agreement.[1] Within this five-year period, Inforex had the right, subject to certain exceptions, to repurchase

---

[1] The parties also executed a shareholder's agreement, which was not significant in the ultimate determination of the validity of the restrictions. See *Steranko* v. *Inforex, Inc.,* 5 Mass. App. Ct. at 267 n.12.

the stock but would lose this right in the event that Steranko should be dismissed without cause. Under both the employment and shareholder's agreements, as well as a subsequent "Employee Stock Restriction Agreement," Steranko's purchase (after stock splits) totaled 34,000 shares. In 1969 Inforex released the restrictions on 8,000 of these, leaving 26,000 restricted shares. Between September, 1970, and May, 1971, Inforex took several actions which had the effect of altering and diminishing Steranko's responsibilities. These actions culminated on May 19, 1971, when Steranko was not reelected as a vice president of Inforex. On November 22, 1971, Inforex dismissed Steranko for failure to assign to the company a patent which he had developed and informed him of its intention to exercise its right to repurchase the 26,000 shares of stock still under restriction. Steranko refused to resell the stock and, on January 5, 1972, made a written demand upon Inforex and State Street Bank and Trust Company, the transfer agent for Inforex stock, to issue, on January 7, 1972, certificates for 22,200 of his shares without legends restricting their sale. On instructions from Inforex, the bank refused the demand and, on November 21, 1973, Steranko brought an action seeking removal of the restrictive legends and damages for Inforex's refusal to issue unrestricted certificates.

The behavior of Inforex in demoting Steranko and diminishing his responsibilities was found by the trial judge, sitting without a jury, and by this court on appeal to constitute a breach of the agreement to employ Steranko in an "executive position." *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. at 262-265. We also held, contrary to a ruling of the judge, that this breach vitiated the restrictions on 24,000 shares of the Inforex stock owned by Steranko[2] and that Steranko was entitled both to specific

---

[2] Two thousand of the 26,000 shares were purchased with restrictions contained in an "employee stock restriction agreement . . . not part of the employment agreement."

performance (the removal of the restrictive legends from certificates representing the 24,000 shares) and damages with respect to 22,200 of those shares. As to the latter, we determined that, under New York law,[3] "[t]he measure of damages is the difference between the market price at the time of Inforex's wrongful refusal [to authorize removal of the restrictive legends], or within such reasonable time thereafter as Steranko might have sold the stock, and the market price at the time of the trial." 5 Mass. App. Ct. at 267-268. We left it to the trial judge to determine the damages under that formula. *Id.* at 268.

After conducting an evidentiary hearing, the judge found that seven working days after January 7, 1972, the date of Inforex's wrongful refusal, was a "reasonable time" in which Steranko could have sold the 22,200 shares and that the "highest interim value" of a share of Inforex stock during this time was $33.25 on January 12, 1972. After a subtraction of damages owed Inforex by Steranko for refusal to resell to Inforex 2,000 shares purchased under the "Employee Stock Restriction Agreement," which was not affected by breach of the employment agreement, net damages for Steranko on the 22,200 shares amounted to $639,424.18. Ruling that Inforex's wrongful refusal was a conversion of the stock, the judge awarded interest running from November 21, 1973, the date Steranko brought his action for Inforex's refusal to remove the restrictions on the stock.

1. *"Reasonable Time."*

Inforex argues that the judge exceeded the direction of the rescript in our earlier opinion by holding an evidentiary hearing for the purpose of determining what could have been a "reasonable time" in which Steranko might have sold the 22,200 shares but for Inforex's wrongful refusal to remove the restrictions. The judge's action,

---

[3] The parties had agreed that the employment agreement should be construed according to the law of New York. *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. at 260.

Inforex contends, was inconsistent with our determination that the matter was a question of law for the judge based upon undisputed facts. See *Steranko* v. *Inforex, Inc.,* 5 Mass. App. Ct. at 268. In the circumstances, the judge, in his discretion, could have decided that the factual record was inadequate on the issue of damages and he could reopen the case in order to obtain more evidence before applying the principle of law set forth in our earlier opinion. *Long* v. *George*, 296 Mass. 574, 577 (1937). *Carilli* v. *Hersey*, 303 Mass. 82, 86 (1939). *Nagle's Case*, 310 Mass. 193, 197-198 (1941). See *Garfield* v. *White*, 326 Mass. 20, 25-26 (1950); *Fisher* v. *MacDonald*, 335 Mass. 429, 431 (1957).

Inforex argues that even if the judge were warranted in conducting an evidentiary hearing, his decision was erroneous as matter of law for two reasons. First, Steranko in his pleadings bound himself to the position that he would and could have sold the 22,200 shares on January 7, 1972. See G. L. c. 231, § 87. Thus, the judge was obliged to use the market price on that date instead of the highest interim value between January 7 and 18, 1972, as the measure of Steranko's damages. Apart from the question whether such a ruling would be consistent with our earlier opinion, we do not think that the pleadings can be fairly construed to confine Steranko to the position that he would and could have sold the 22,200 shares on January 7, 1972. In support of its contention that Steranko is bound to this date, Inforex refers to paragraph 19 of Steranko's declaration and to exhibits B and D to that declaration. See Mass.R.Civ.P. 10(c), 365 Mass. 752 (1974). Nothing in paragraph 19 or exhibit B can be construed as averring Steranko's willingness and ability to sell all 22,200 shares on January 7, 1972. In exhibit D, Steranko's counsel, replying to Inforex's refusal to remove the restrictions, stated that Steranko would hold Inforex liable for "any diminution in the value of the shares of Inforex stock which he could have and would have sold on Friday, January 7, 1972" but for Inforex's refusal, and "for the

diminution in value, if any, of all 26,000 shares from the value of such shares on January 7, 1972." The judge could have viewed these averments merely as attempts to preserve Steranko's right to damages by establishing that his intent in demanding removal of the restrictions was to sell the stock in the immediate future. There was no allegation that Inforex's refusal cost Steranko an opportunity to sell the stock to a ready and willing buyer or buyers on a certain date. The judge could have concluded that the phrase "could have ... sold," in light of the pleadings viewed as a whole, referred to Steranko's obtaining an indication (a "no action" letter) from the Securities and Exchange Commission that it would not require that he register his stock under the Securities Act of 1933 before selling it.

Inforex also argues that under New York law Steranko's damages must be measured from the date of the wrongful refusal (or, in the words of Inforex, from "a reasonable time thereafter of one day"). This interpretation of the rule would not only render the words "reasonable time" meaningless, but is not supported, as Inforex claims, by *Riskin* v. *National Computer Analysts, Inc.*, 62 Misc. 2d 605 (Sup. Ct. 1970), modified, 37 App. Div. 2d 952 (N.Y. 1971). While the Supreme Court of New York, in determining whether Riskin suffered damages, used the price on the date of refusal itself (September 23, 1969) for the purpose of comparison with the price at the time of trial, it noted that "the shares ... sold since September 23, 1969 ... for approximately the same price as the price at time of trial." 62 Misc. 2d at 609. Thus, that court did not require that the market price on the date of refusal be used to measure damages rather than a higher price reached during a "reasonable time thereafter." It appears that the stock had no higher value between September 23, 1969, and the time of trial. On appeal in *Riskin* the judgment was modified by the Appellate Division which held that the date of refusal was July 9, 1969, and not September 23, 1969. While the court used the price on

July 9 in the computation of damages, there was again no indication that the stock had a higher value at any time (reasonable or unreasonable) thereafter.

Also, Inforex's position does not comport with several other New York cases which hold that determination of a reasonable time depends on the circumstances of each case (*Phillips* v. *Bank of Athens Trust Co.*, 202 Misc. 698, 702 [N.Y. Sup. Ct. 1952]) and that "under varying circumstances . . . thirty days or fifteen days or sixty days would be such reasonable period." *Mayer* v. *Monzo*, 221 N.Y. 442, 446-447 (1917). See citations in *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. at 268. See also *Mullen* v. *Quinlan*, 195 N.Y. 109, 115 (1909). Inforex argues that those cases, which involved a defendant's unauthorized sale of the plaintiff's stock, are not relevant to a mere refusal to remove a restriction on sale, the situation in this case and in *Riskin*. However, we relied on those cases in our previous opinion, and while the *Riskin* court did not cite them, its statement of the rule used in measuring damages comports with the rule stated therein. See *Riskin* v. *National Computer Analysts, Inc.*, 62 Misc. 2d at 609. Furthermore, in our view, there is a basic similarity between the situation of one who intends to sell stock which is wrongfully restricted and that of one who must repurchase stock wrongfully sold so as to warrant application of the same rule of law in the computation of damages. See *Madison Fund, Inc.* v. *Charter Co.*, 427 F. Supp. 597, 609, 610 (S.D.N.Y. 1977).

The justification for fixing the date from which damages are measured within a "reasonable time" of the date of refusal rather than on the date of refusal itself, in cases involving wrongful sales of stock, reflects several considerations (see *Gelb* v. *Zimet Bros.*, 34 Misc. 2d 401, 403 [Sup. Ct. 1962], aff'd 18 App. Div. 2d 967 [N.Y. 1963]). The most important of these is to give the rightful owner a reasonable opportunity to determine the trend of the market, and at what price to purchase "replacement" stock. *Burhorn* v. *Lockwood*, 71 App. Div. 301, 305 (N.Y.

1902). By analogy, Steranko, after he decided to dispose
of his stock and took the first step in that direction with
his demand on January 7, 1972, was entitled to a reason-
able opportunity to determine the trend of the market
and an advantageous time at which to sell the shares.

In ruling that the determination of a "reasonable time"
must include a consideration of "(a) the time needed to
remove any restrictive legends on the stock, (b) the time
needed for the issuance of new [clean] certificates and
(c) the time needed for an orderly disposition of the stock
in the market," the judge applied correct principles of law
comporting with our earlier opinion.

2. *Evidentiary Hearing.*

Inforex contends that the judge erred in permitting
Steranko to introduce evidence pertaining to other sales
of once restricted stock to show what would have been a
"reasonable time" in which Steranko might have sold the
22,200 shares had the restrictions been removed. Inforex
argues that this evidence was not relevant because Ste-
ranko failed to show that the circumstances of the actual
sales were similar to those which would have attended
the sale of 22,200 shares. The challenged evidence includ-
ed testimony and exhibits pertaining to Steranko's de-
mand for and State Street Bank's release of the 8,000
shares from which Inforex had voluntarily removed the
restrictions and to Steranko's subsequent sales of 6,500 of
these shares as well as other testimony and exhibits
which were offered to show the average time between
demand and release of restricted shares intended for sale
by other individuals and the average time of obtaining
the opinion of corporate counsel regarding the need for
registration of these shares.

There was no error. As this evidence referred to the
period just before and just after Inforex's refusal to re-
lease the 22,200 shares,[4] the judge could have concluded

[4] Steranko's sales of the 6,500 shares occurred during the last week
of December, 1971, and the first week of January, 1972. The remaining

that there was substantial identity between the circumstances of the other sales and those of the sale of the 22,200 shares. See *Robitaille* v. *Netoco Community Theatre of No. Attleboro, Inc.*, 305 Mass. 265, 268 (1940); *American Auto Sales, Inc.* v. *Massachusetts Port Authy.*, 2 Mass. App. Ct. 805 (1974). Moreover, the admission of this evidence was harmless since it appears to have been largely unreflected in the judge's findings (*Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 734 [1979]; see note 5, *infra*), at least with respect to the time required to obtain the opinion of counsel and then to issue certificates without restrictions.

Both parties argue that if it was proper to hold an evidentiary hearing on the issue of "reasonable time," then the judge drew an erroneous conclusion from the evidence in fixing the time as seven business days after Inforex's wrongful refusal on January 7, 1972. Not surprisingly, since the price of the stock rose immediately after January 7, 1972, Inforex argues that this was too much time and that three business days were sufficient; while Steranko contends that the period found by the judge was far too short to enable Steranko to make an orderly disposition of his stock. Where, as here, we have before us a transcript of the evidence, exhibits, and the judge's rulings, his findings will not be disturbed unless clearly erroneous although we may find facts in addition to those found by him. *Taylor* v. *Lassell*, 4 Mass. App. Ct. 539, 540 (1976). *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. at 255. We perceive no such error in this instance. There was evidence adduced at the hearing which supports the judge's findings.[5]

---

evidence pertained to transactions which occurred in January, 1972. The judge excluded evidence pertaining to the actual sales of the 22,200 shares in 1977 (following our earlier opinion which ordered the shares transferred without the restrictions) as "too remote" from the pertinent period of January, 1972.

[5] Steranko's argument that the judge was required to accept his evidence of "reasonable time" on the ground that Inforex presented

## 3. *Increase in Value Between Trial and Delivery.*

Inforex contends that Steranko has been made more than whole by the damage award inasmuch as he received (a) a sum amounting to the difference between the highest interim value of the stock during a reasonable time after Inforex's wrongful refusal and the time of trial and (b) the stock itself, which, by the time it was delivered to him free of restrictions on September 8, 1977, after our earlier opinion in this case, had increased about twofold over its value at the time of trial (June 18, 1974). This

---

no evidence to meet its burden of rebutting Steranko's position is without merit. Inforex did offer contrary evidence; but the judge could reasonably have decided upon a time span not advanced by either party. See *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 731 (1979). In ruling that the transfer agent could have received an opinion letter releasing the restrictions from counsel for Inforex by Monday, January 10, 1972, and could then have issued "clean" certificates to Steranko on the following day, the judge appears to have rejected Steranko's evidence on this matter and to have adopted a position closer to that advanced by Inforex, which argued that the opinion of counsel for Inforex could and would have reached Inforex so that the transfer agent could have released "clean" certificates on Friday, January 7, 1972, the day Steranko demanded release of the certificates. Even assuming the correctness of Inforex's contention, Steranko still would not have been required to sell his 22,200 shares before January 12, 1972, the date of their "highest interim value" during the "reasonable time" found by the judge, in view of the judge's finding that five business days was a reasonable time for Steranko to make an orderly disposition of the stock. Steranko contends that, in arriving at a time span of five days, the judge mistakenly interpreted the testimony of Steranko's expert to mean that Steranko could have sold twenty percent of his stock each day for five days, while in fact the expert testified that Steranko could, per day, have sold twenty percent of the daily market volume of Inforex stock, a much smaller quantity which would have considerably lengthened the time for disposing of the stock. But Inforex's expert testified that, at most, only three trading days would have been needed for the sale of the 22,200 shares. Steranko's contention of error in the judge's failure to allow time for him to consult his lawyer and broker before disposing of the stock lacks merit for Steranko presumably had such consultations prior to selling the 6,500 shares in the recent past. In any event the judge's determination of "reasonable time" was well within the wide range exhibited by the cases. See Annot., 31 A.L.R.3d 1332-1334 (5[e]) (1970).

increase in value, Inforex argues, gave Steranko more than he would have received had he sold the stock on January 7, 1972, or within a reasonable time thereafter, and should therefore be deducted from his damages. (Steranko argues that the risk of an increase in price between time of trial and the delivery of the shares should be borne by the wrongdoer, Inforex, and that the increased value of the stock at the time of delivery should not be deducted from his damages.)

Inforex's contention is not properly before us, inasmuch as Inforex failed to raise it before the judge upon remand on the question of damages. Inforex argues essentially that it was excused from raising the issue at that time because the judge was bound to apply the rule set out in our previous opinion that damages were to be measured from a reasonable time after the refusal to the time of trial. Although consideration of the change in value of the shares between the time of trial and that of delivery was not included in the formula directed to the trial judge upon remand, there was nothing in that direction which precluded Inforex from raising that issue before the judge. The purpose of the remand was to have the judge determine damages; and Inforex, at that time, should have raised any issue which it thought pertinent to that determination. Inforex cannot now complain of its failure to take advantage of that opportunity. See *Fisher v. Fisher*, 352 Mass. 592, 597 (1967). See also *Shulkin v. Shulkin*, 301 Mass. 184, 192 (1938); *Morad v. Ramos*, 330 Mass. 560, 563 (1953); *Lexington v. Bedford*, 378 Mass. 562, 567-568 (1979). Even assuming that Inforex were excused from raising that issue at the hearing before the judge, it has cited no New York authority, nor have we found any in circumstances similar to those presented here, calling for the assessment of damages as of the time of delivery of stock rather than at the time of trial.

4. *Interest.*

The parties dispute the proper date from which interest should be computed on Steranko's damages. Inforex

argues that the judge was correct in ruling that Inforex's refusal to transfer the restricted stock was a conversion, and that therefore interest was to be measured from the date of commencement of Steranko's action brought on November 21, 1973, in accordance with G. L. c. 231, § 6B. Steranko contends that Inforex's action was a breach of the employment agreement and that interest should be measured from the date of the "breach or demand" in accordance with G. L. c. 231, § 6C. As neither party has argued whether the law of New York or Massachusetts governs the determination of Steranko's right to interest or its rate (they appear to have assumed that the law of Massachusetts governs), we apply the law of this jurisdiction. *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.*, 343 Mass. 622, 625 (1962). *Hobbs Brook Agency, Inc.* v. *North River Ins. Co.*, 7 Mass. App.•Ct. 885, 887 (1979).

Whether or not Steranko's action regarding the stock should be characterized as one for conversion, our earlier opinion held that Steranko's remedy was generated directly by Inforex's breach of the employment agreement. We ruled that "the breach of the employment agreement by Inforex vitiated the restrictions under section 12 [of the employment agreement] on 24,000 shares of Steranko's stock and entitled him to have the restrictive legends removed from his certificates." *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. at 267. Inforex had a duty under the employment agreement to issue transferable certificates so long as Steranko did nothing to forfeit that privilege. That duty arose before the expiration of the five-year term prescribed in § 12 of the agreement when Inforex breached the contractual provision that Steranko be employed in an "executive position." Also, were Steranko's remedies not contractual in nature, this issue would not have been determined under New York law, which became applicable only because it was chosen by the parties to govern the employment agreement. See *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. at 260. We conclude that the judge should have measured interest on Steranko's

damages from the date of "breach or demand" in accordance with G. L. c. 231, § 6C. Inforex has not seriously disputed Steranko's assertion that that date was January 5 rather than January 7, 1972.[6]

The cases are remanded to the Superior Court for recomputation of interest from January 5, 1972, in accordance with G. L. c. 231, § 6C. In all other respects the judgment entered in the Superior Court on January 23, 1978, is affirmed.

*So ordered.*

---

[6] Even if Steranko's action against Inforex were more properly characterized as one for conversion, it is not clear that G. L. c. 231, § 6B, would apply so as to require computation of interest on damages from the date of the commencement of the action. Whether or not the enactment of G. L. c. 231, § 6B, changed the substantive law pertaining to the calculation of interest on damages obtained in certain tort actions, see *Sylvania Elec. Prod.* v. *Barker*, 228 F.2d 842, 851 (1st Cir. 1955), cert. denied, 350 U.S. 988 (1956), it does not appear that the statute had any substantive effect on the calculation of interest on damages obtained in an action for conversion. Our courts have traditionally awarded interest measured from the date of the conversion as a part of damages in an action for conversion. *Hall* v. *Paine*, 224 Mass. 62, 77 (1916). *Lawyers Mortgage Inv. Corp.* v. *Paramount Laundries Inc.*, 287 Mass. 357, 361 (1934). *Manhattan Clothing Co.* v. *Goldberg*, 322 Mass. 472, 475 (1948). See Annot., 36 A.L.R. 2d 337, 391-393 (§ 30 [a]) (1954). While there is no explicit authority for the nonapplicability of G. L. c. 231, § 6B, to actions for conversion, we have found no case which has applied this statute to the computation of interest on damages in such an action. Moreover, our courts, in actions for conversion since the statute's enactment, have thus far adhered to the common law rule requiring the measurement of interest from the date of conversion without mentioning the statute. See *Manhattan Clothing Co.* v. *Goldberg, supra. Joy Stevens* v. *Plymouth Finishing Co.*, 355 Mass. 390, 393-394 (1969). *C C & T Constr. Co.* v. *Coleman Bros. Corp.*, 3 Mass. App. Ct. 372, 377 (1975). One court has recognized the possibility that G. L. c. 231, § 6B, does not apply to an action for conversion. See *Morgan Guar. Trust Co.* v. *Third Natl. Bank*, 545 F.2d 758, 759 (1st Cir. 1976).