NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-525                                              Appeals Court

C.E.R.  vs.  P.C. & another.[1]


No. 16-P-525.

Essex.     December 1, 2016. - March 6, 2017.

Present:  Milkey, Massing, & Sacks, JJ.


Civil Harassment.  Harassment Prevention.  Protective Order.
    Words, "Intimidation."



Complaint for protection from harassment filed in the
Ipswich Division of the District Court Department on December
28, 2015.

A hearing to extend harassment prevention orders was had
before Peter F. Doyle, J.


Ryan D. Sullivan for the defendants.


SACKS, J.  The defendants, who were roommates, appeal from

the District Court's extension of harassment prevention orders

obtained by their then-landlord pursuant to G. L. c. 258E.[2]  We

conclude that the evidence was insufficient to support a finding

_____

[1] R.C.

[2] The plaintiff landlord did not submit an appellate brief.

that either defendant had engaged in three or more acts of harassment, and we therefore vacate the extension orders.[3] We also take the opportunity to emphasize that when a landlord seeks a c. 258E order against tenants, a judge should examine the allegations of harassment carefully, to ensure that c. 258E is not being used as a substitute for eviction through a summary process action under G. L. c. 239.

Background.[4] The plaintiff owned a single-family home which included an "in-law" apartment over the attached garage. Following her divorce, the plaintiff was ordered by the Probate and Family Court to place her home on the market, which she did in April, 2015. In mid-2015, the plaintiff rented the apartment to the defendants, while she continued to live in the rest of the home. The defendants agreed to allow the plaintiff access to the apartment in order to show the home to potential buyers. One of the defendants, R.C., owned a dog, which also occupied the apartment. The defendants paid rent and contributed to

---

[3] The orders expired by their own terms on December 29, 2016. The case is not moot, however, because the defendants seek to have the orders vacated and certain records of those orders destroyed. See Seney v. Morhy, 467 Mass. 58, 62 (2014); Gassman v. Reason, 90 Mass. App. Ct. 1, 6-7 (2016).

[4] We recite the uncontested facts elicited during the testimony of the parties at the evidentiary hearing, supplemented with the plaintiff's statements contained in her affidavit and police reports, which the plaintiff, at the hearing, affirmed under oath were true.

utility costs, and the living arrangement continued more or less uneventfully until the fall of 2015.

Following the events discussed infra, the plaintiff obtained ex parte harassment prevention orders against both defendants on December 28, 2015, requiring them to stay away from the premises and from her.[5] After an evidentiary hearing on January 7, 2016, the judge extended both orders for one year, requiring the defendants to vacate the premises immediately and stay away from them thereafter.

Standard for issuance of harassment prevention orders. As relevant here, G. L. c. 258E, § 1, inserted by St. 2010, c. 23, defines harassment as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." "Malicious" is defined as "characterized by cruelty, hostility or revenge." Ibid. Case law has limited the meaning of "fear" to "fear of physical harm or fear of physical damage to property." O'Brien v. Borowski, 461 Mass. 415, 427 (2012). "Intimidation" is not defined in the statute. "Abuse" is defined as "attempting to cause or causing physical harm to

_____

[5] On the defendant P.C.'s motion, his order was modified on December 29, 2015, to allow him to reoccupy his apartment. Although the docket and order in the defendant R.C.'s case do not reflect a similar modification, the ruling on the motion apparently applied to both defendants.

another or placing another in fear of imminent serious physical harm."  G. L. c. 258E, § 1.

Thus, at the extension hearing, the plaintiff was required to prove, by a preponderance of evidence, that each of the defendants wilfully and maliciously committed three separate acts that were intended to cause her fear, intimidation, abuse, or damage to property, and that, "considered together, did in fact cause fear, intimidation, abuse, or damage to property." O'Brien, 461 Mass. at 426 & n.8.  Both standards are subjective: there must be proof of the defendant's subjective intent, id. at 426, and the plaintiff need only show that she subjectively experienced fear, intimidation, or abuse, without having to satisfy any reasonable person test.  Id. at 420.  Petriello v. Indresano, 87 Mass. App. Ct. 438, 444-445 (2015).

Findings in support of extension order.  On appeal, the defendants contend that the evidence was insufficient to support the factual findings necessary to the judge's ultimate conclusion that they had harassed the plaintiff.  We review the factual findings for clear error.  See DeMayo v. Quinn, 87 Mass. App. Ct. 115, 116-117 (2015).

Here, the judge credited the plaintiff's testimony in full. He found that "the defendants were extremely upset when [the plaintiff] asked [them] to leave in the fall of 2015" and "began engaging in a pattern of harassing conduct" that included a

series of particular acts about which the judge made detailed findings.  The judge then made three over-all findings:  that the defendants' conduct was (1) "wilful"; (2) "motivated by hostility and revenge" (i.e., committed with the requisite malice); and (3) "intended to place the plaintiff in fear of bodily harm, cause her financial hardship, and damage her property."[6]

We observe at the outset that fear of economic loss occasioned by the defendants' actions cannot form the basis of a harassment prevention order.  See O'Brien, 461 Mass. at 427.  Insofar as property is involved, only fear of physical damage will suffice.  See ibid.  Thus, in evaluating the judge's conclusions that specific acts constituted harassment, we put aside, as legally irrelevant, the finding that the defendants intended to cause financial hardship.

1.  Dog and related property damage.  The judge found that the defendants kept "a dog inside the property without the permission of the plaintiff and allow[ed] the dog to damage the property."  But there was no evidence that the defendants were motivated to keep the dog (or to allow it to do damage) by cruelty, hostility, or revenge targeting the plaintiff.  On

_____

[6] The judge's findings do not differentiate between the two defendants, apparently attributing either's conduct to both of them.  Although that approach has not affected the result we reach here, specifying which findings apply to which defendant(s) is preferable and could be critical in other cases.

occasion, the plaintiff had taken care of the dog when the defendants were not home, just as they had taken care of her pets when she was away, and she described the dog as "very sweet." After an incident in November, 2015, in which the dog destroyed a sofa belonging to the plaintiff, the defendants compensated her for the damage.[7] There is no evidence that any damage resulted from a "malicious" act, as the statute requires, or was anything other than incidental to ordinary pet ownership.

2. Conduct interfering with property sale or rental. The judge found that the defendants committed three acts with the intent to interfere with the plaintiff's efforts to sell the property or rent it to a possible buyer. These acts included (1) leaving a dildo in the closet of the apartment's kitchen where it was discovered by a potential buyer; (2) leaving marijuana and other drug paraphernalia in plain view in the apartment; and (3) smoking marijuana "so that the home would reek of the substance and could not be shown to potential renters or buyers." Yet there was no evidence that any of these acts was intended to (or did) cause the plaintiff fear of bodily harm or cause property damage. The plaintiff's objections were that the conduct was "inappropriate," "embarrassing," and

---

[7] The plaintiff testified to other property damage caused by the dog, but presented no evidence to suggest that the defendants maliciously failed to attempt to prevent such damage or actively encouraged it.

"hinder[ed] the sale of the house." That is insufficient to constitute harassment. See O'Brien, 461 Mass. at 427.[8]

3. Conduct to "intimidate" the plaintiff. The judge found that the defendants committed three acts with the intent to "intimidate" the plaintiff. These consisted of (1) "[p]laying loud music at all hours of the night," which the plaintiff testified she found "harassing and abusive" and caused her "stress and anxiety"; (2) "[u]sing strobe lights at night to keep the [plaintiff] awake," which lights the plaintiff testified made her house "look[] more like a bar, a nightclub, to passers-by" and made realtors think the house was "not showable"; and (3) "[i]nstalling video cameras on the property," aimed at the driveway and a living room,[9] which the plaintiff testified she found "[un]necessary," "inappropriate," and "very offensive."

Because G. L. c. 258E does not define "intimidation," and because we strive to give that term some meaning not already conveyed by the statutory term "fear," see A.T. v. C.R., 88

---

[8] The judge also found that the defendants "[e]ngag[ed] in obstructive behavior so that the plaintiff could not rent or sell her home and would be in violation of the Probate Court order." To the extent that this finding described any behavior beyond that detailed above, such behavior was similarly insufficient to constitute harassment.

[9] It is unclear from the record and findings whether the living room was in the defendants' apartment or in the main house.

Mass. App. Ct. 532, 536 (2015), we have looked for guidance to decisions defining "intimidation" for purposes of other statutes. See ibid. But each of those other definitions in turn relies upon the term "fear," see ibid., and we have not yet had to determine whether any form of "fear" beyond fear of physical harm or physical damage to property, see O'Brien, 461 Mass. at 427, might suffice as a component of "intimidation."

Nor need we do so here. As to the loud music and strobe lights, the plaintiff did not testify, nor was there any other evidence, that they were intended to (or did) cause her fear of any sort.[10] As to the cameras, although there was additional testimony by the plaintiff that could be construed to mean that the cameras indirectly caused her "fear" (rather than "intimidation"), there was no evidence that the defendants intended the cameras to do so. "[A]n essential element of civil harassment is intent." Seney v. Morhy, 467 Mass. 58, 63 (2014), citing O'Brien, 461 Mass. at 426-427. The plaintiff's affidavit stated that the cameras had been placed in July, 2015, well before the fall, when relations first soured due to the plaintiff telling the defendants that they had to move out.

---

[10] Although keeping a person awake for extended periods might in some circumstances cause bodily harm, there was no evidence here that the lights were intended to or did keep the plaintiff awake or made her fear any bodily harm.

4. <u>Conduct during the defendants' move-out</u>. The judge found that the defendants "[became] intoxicated and then threaten[ed] the plaintiff when they were moving items[,] causing the plaintiff so much fear that she had the . . . police come to the home." The evidence underlying this finding was that on December 27, 2015, the plaintiff went to the local police department to give the police a "heads up" that the defendants were "making her feel uncomfortable." She reported that the defendants were "complicating her showing the home," that she had asked them to move out, and that they had been removing their things, but she remained "concerned that they [would not] leave willingly."

The plaintiff testified at the extension hearing that when the defendants came to remove their belongings from the garage, "[t]hey were upset because the door was locked," to which she replied that "[a]ll they had to do was ask and, at that time, [she] opened the garage door." She acknowledged that the defendants made no specific threats during this encounter, but "they were very drunk and disorderly and they were aggressive and I had already gone to the police that day, um, to just let them know that I had been addressed aggressively by two men living in my house, multiple times." The plaintiff provided no further details other than that the defendants were "yelling

through the door." She did not ask the police to come to her home, nor did they.

The finding that the defendants "threaten[ed]" the plaintiff and caused her "fear" during this incident is unsupported by the record. The plaintiff specifically denied that any threats were made. She did not identify any act by either defendant that was intended to (or did) cause her fear of physical harm or property damage. Although she did go to the police, her stated intention in doing so was to warn them that the defendants might refuse to leave her property, reflecting only her concern that their continued presence would impede the sale of her home.

5. Violation of order. The judge found that the police had responded multiple times to the residence, "culminating in criminal process being issued against both defendants for failure to abide by the harassment order." The underlying evidence was a police report from January 4, 2016, which describes the defendants interfering with a showing of the property on the previous day by keeping their bedroom doors shut and refusing to allow the potential renter or buyer access to the bedrooms. The officer involved applied for criminal complaints against both defendants for violating the provision of the preliminary harassment prevention orders forbidding them from "interfer[ing] in any way with the rental or sale of the

property."[11]  Such violations, if they occurred, would not qualify as an act of harassment, because obstructing the sale or rental of the home could result only in economic damage.

6. <u>Remarks overheard by the plaintiff</u>.  The judge found that the defendants had "[told] the [plaintiff] that she is a cunt, and that this is all so awesome because she is fucked[,] causing the plaintiff fear, stress and anxiety."  The police report and the plaintiff's testimony recounted that she had "overheard" the defendants, while in a room separated from hers by a glass door, "talking about her," "not directly to [her]," but loudly enough that she believed they knew she could hear them.  They made the remarks described above, as well as saying, "she has no idea what she's in for."

An instance of speech may support a harassment prevention order only if it falls outside the protections of the First Amendment to the United States Constitution, either by consisting of "fighting words" or by constituting a "true threat."  See <u>O'Brien</u>, 461 Mass. at 423-424; <u>Seney</u>, 467 Mass. at 63; <u>Petriello</u>, 87 Mass. App. Ct. at 446.  Among the comments described, we question whether any constituted "fighting

---

[11] The record before us does not reflect whether such complaints ever issued.

words,"[12] and the only one that could arguably be interpreted as a "true threat"[13] is, "she has no idea what she's in for." The plaintiff never stated that the remarks caused her to fear bodily harm or property damage. Rather, she characterized them as representing the defendants' "passive-aggressive" desire to cause her economic harm: "They know that, by not leaving and not paying rent [they] will most likely put me into foreclosure." As noted, fear of economic harm does not constitute "fear" under G. L. c. 258E. See O'Brien, 461 Mass. at 427. We will nevertheless put aside our questions and assume without deciding that the overheard remarks constituted an act of harassment by one or both defendants.[14]

---

[12] The exception for "fighting words" is limited to "face to face personal insult[s]," Commonwealth v. Welch, 444 Mass. 80, 98-99 (2005), "directed to the person of the hearer" and "inherently likely to provoke violent reaction." Cohen v. California, 403 U.S. 15, 20 (1971), quoting from Cantwell v. Connecticut, 310 U.S. 296, 309 (1940). Although calling a person a "cunt" might in some circumstances constitute "fighting words," here, the defendants' comment was not directed to the person of the plaintiff. Compare State v. Dugan, 369 Mont. 39, 54, cert. denied, 134 S. Ct. 220 (2013) (addressing person as "fucking cunt" over telephone did not constitute "fighting words").

[13] "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat." O'Brien, 461 Mass. at 423, quoting from Virginia v. Black, 538 U.S. 343, 359-360 (2003).

[14] The judge made no finding, and there was no evidence, regarding which defendant had made which remark(s). Even if one

7. _Remarks made to plaintiff_. The judge found that one of the defendants, P.C., when the plaintiff first informed him by telephone that he had to move out, said, "you are fucking up my life," and then hung up; the judge found that this "threat caused so much fear in the plaintiff that she asked a friend to stay with her for the night." The plaintiff testified that this statement made her "immediately uncomfortable that day and every day since then. Their behavior is, without question, hindering the future sale and current rental of the property." Defense counsel asked, "Did that cause you harm at all -- that he hung up the [tele]phone?" The plaintiff replied, "It was intimidating and I was nervous to see what tomorrow would bring. I had someone stay with me that night." But when asked immediately thereafter whether either defendant had ever touched her without permission or had "ever threatened to cause [her] physical harm," the plaintiff replied, "No." We will, nevertheless, again put aside our questions and assume without deciding that the comment constituted an act of harassment by P.C.

The judge also found that after the plaintiff asked the defendant R.C. to remove the dog from the premises, he told her, "don't fuck with my dog." The plaintiff testified that this

_____

defendant had made both, we would not be inclined to view two relatively similar remarks made during a single incident as two separate acts of harassment.

statement "seemed kind of threatening at the time" because R.C. was "basically saying, 'Don't -- or else.'"  Without exploring fully whether this could be considered a "true threat," particularly where the plaintiff testified that neither defendant had ever threatened her with physical harm, we will assume, without deciding, that the comment constituted an act of harassment by R.C.

8.  Summary.  In sum, the only possible acts of harassment here were the overheard remarks made by one or both defendants; P.C.'s statement over the telephone; and R.C.'s statement regarding his dog.  This amounts to at most two acts by each defendant, whereas the definition of "harassment" requires "[three] or more acts . . . ."  G. L. c. 258E, § 1.  For an order to enter against either defendant, three acts of harassment by that defendant must be proven.  See generally Petriello, 87 Mass. App. Ct. at 445-447 (stressing need to identify which particular defendant had committed each act of harassment).  Although there is no requirement that each specific act actually cause fear, intimidation, abuse, or damage to property -- what matters, instead, is whether the three or more acts "considered together" did so, see O'Brien, 461 Mass. at 426 & n.8 -- the defendant must still have committed three wilful and malicious acts that were intended to cause fear, intimidation, abuse, or damage to property.  Id. at 426.  The

statute neither states nor implies that different acts by different defendants may be aggregated in order to reach the three-act threshold and then enter an order against each defendant. We conclude that the defendants' conduct -- while boorish and no doubt upsetting and logistically and financially problematic for the plaintiff -- did not constitute "harassment" within the meaning of c. 258E.

Harassment prevention orders and summary process. The plaintiff's principal apparent motivation in filing police reports and seeking the c. 258E orders was to induce the defendants to leave without interfering with the rental or sale of the property. Thus, in filling out her original form complaints, the plaintiff did not check the boxes requesting orders that the defendants stop harassing her -- only the boxes requesting orders that they stay away from her residence. When asked directly about her motives, she replied, "My motivation is that, by court order, I am -- I have to sell my property, per my divorce . . . ."[15] On two occasions, when she spoke to the police, an officer advised her to "talk with a lawyer about

---

[15] She made multiple other statements to the same effect, e.g., that the defendants were "hiding behind tenant rights for no reason other than to use my house to party and it is clear they are trying everything [they] can to prevent me from selling my home." During her testimony, she said no fewer than six times that the defendants were "impeding" or "hindering" the sale of her home.

legally evicting the tenants."  Indeed, the judge recognized that, "[o]n the surface, the case appeared to be an attempt by the plaintiff to circumvent a proceeding in summary process."  At no time, however, did the plaintiff initiate a summary process action.  Indeed, by the time of the evidentiary hearing, the defendants had already begun to move out.  In a case such as this, a judge must carefully evaluate the evidence to ensure that c. 258E is not used as a short-cut for evicting tenants without following summary process procedures, or for preventing purely economic harm.[16]

Conclusion.  The orders extending the harassment prevention orders against both defendants are vacated.[17]

So ordered.

---

[16] Compare Gassman v. Reason, 90 Mass. App. Ct. 1, 3-4 & n.5 (2016) (in response to plaintiff's request at G. L. c. 258E hearing that defendant, another tenant in same building, be evicted, judge explained that he could not do so).

[17] The defendants' brief seeks the destruction of relevant law enforcement records.  We see no need to order such relief ourselves, because under G. L. c. 258E, § 9, inserted by St. 2010, c. 23, "[t]he court shall notify the appropriate law enforcement agency in writing whenever any such order is vacated and shall direct the agency to destroy all record of such vacated order and such agency shall comply with that directive." The trial court should take such action as a matter of course in any case when a c. 258E order is vacated, including this one, without specific direction from an appellate court.  "The law . . . mandates" such action. Seney v. Morhy, 467 Mass. at 60-61 & n.6.