JOY STEVENS OF CALIFORNIA *vs.* PLYMOUTH FINISHING CO., INC.

Bristol.   January 10, 1969. — February 28, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Lien.   Conversion.*

Where it appeared that a seller of cloth, after obtaining an order therefor, procured the cloth and sent it to a finishing company to be dyed and finished and shipped to the buyer, that the buyer, asserting that the cloth was not as ordered, returned it to the finishing company, that, after correspondence and an unsuccessful attempt by the finish-

ing company to comply with an instruction of the buyer to sell the cloth, the buyer directed the finishing company to send the cloth back to the buyer, and that the finishing company refused to do so, claiming a lien on the cloth under G. L. c. 255, § 31A, by reason of an amount alleged to be due from the buyer to the seller on an open account, it was held that in the circumstances the finishing company had no such lien and that it converted the cloth.

TORT. Writ in the Superior Court dated June 25, 1959.

The action was heard by *Thompson*, J., on an auditor's report.

*Melvyn D. Cohen* for the plaintiff.

No argument or brief for the defendant.

WILKINS C.J. This action of tort is for the conversion of cloth. The answer was a general denial and a defence that the defendant had a lien on the property under G. L. c. 255, §§ 31A and 31B. The case was referred to an auditor, whose findings were not to be final. He filed a report and a supplemental report. The plaintiff and the defendant each filed a motion for judgment on the reports. The defendant's motion was allowed, and the plaintiff excepted. The facts are as found by the auditor.

The plaintiff (Stevens), with an usual place of business in Los Angeles, was engaged in the manufacture and sale of ladies' blouses and sportswear. The defendant (Plymouth), with an usual place of business in Fall River, was engaged in the dyeing and finishing of textiles.

Mill Distributors, Inc. (Mill) with places of business in New York City and in Fall River, is a converter of textiles. A converter obtains orders for cloth, arranges for its purchase, sends the fabric to a finishing company for dyeing and finishing, and ships the product to its customer.

Grahampton Corporation (Grahampton), with a place of business in New York City, acted as a factor which financed accounts receivable of converters up to eighty per cent of the account at the time of shipment.

During the period 1955–1957 the normal business relationship of these companies was that a salesman for Mill in the Los Angeles area obtained an order for finished goods from Stevens and transmitted it to Mill. Mill ordered them

and directed Plymouth to finish and dye them and to ship the finished goods to Stevens. Plymouth billed Mill; Mill billed Stevens; and the account of Stevens to Mill was factored by Grahampton.

There were many departures from the usual procedure in the period. These were due to deductions or charge backs made by Stevens from Mill's invoices, because merchandise was allegedly shipped without authority, or was defective, or colors were improper. Some of the deductions were allowed by Mill and some were not.

In early 1957 these disputes came to a head when Stevens shipped certain merchandise back to Plymouth, claiming it was not as ordered and refused to make payment. This consisted of about 10,800 yards of three kinds of cloth, one of which was 4,012¾ yards mint cloth. The merchandise was shipped consigned to Plymouth, and letters passed between Stevens and Plymouth as to its disposition. On August 21, 1957, Stevens' attorney wrote Plymouth authorizing it to claim and sell the merchandise and to "apply the proceeds . . . against any balance due in favor of Grahampton Corp., and . . . Joy Stevens [will] remit the balance promptly upon ascertaining the sale price." On August 23, Plymouth replied indicating a willingness to comply, but not until Stevens paid the Grahampton account in full. In early September, 1957, Stevens paid Grahampton the full amount owed and not in dispute. On September 28, 1957, Plymouth took in the goods from the carrier. This was the first direct dealing by Stevens with Plymouth, all other dealings having been with Mill or Grahampton.

Plymouth was unable to get any satisfactory offer. On December 13, 1957, Stevens notified Plymouth to ship all cloth to Stevens. On January 3, 1958, Plymouth complied in part with the request, and shipped back all the cloth except the 4,012¾ yards of mint, claiming that there were unpaid charges totaling $1,024.21 against Stevens by Mill, and additional amounts owed Grahampton, and a transportation company.

The 4,012¾ yards were held by Plymouth under a claim

of lien pursuant to G. L. (Ter. Ed.) c. 255, § 31A, which provides: "A lien on account of work, labor and materials furnished in the spinning, throwing, manufacturing, bleaching, mercerizing, dyeing, printing, finishing or otherwise processing of cotton, wool, silk or artificial silk . . . as against goods in the lienor's possession, shall extend to any unpaid balance of account for work, labor and materials furnished in the course of any such process in respect of any other such goods of the same owner whereof the lienor's possession has terminated. . . ."

The auditor found, if it was within his province, that Plymouth did not have a lien under § 31A. "It did not supply any work, labor or materials such as spinning, etc. which would give rise to a lien." He also found, if it was within his province, that, in so far as there could be any derivative lien in favor of Plymouth as a result of Stevens' agreements with Mill and Grahampton, such a lien terminated when Stevens paid Grahampton the full amount due as insisted by Plymouth. On the basis of the foregoing facts, he found that Plymouth converted the 4,012¾ yards; that the date of the initial conversion was January 3, 1958, when Plymouth shipped back some merchandise and refused to ship the 4,012¾ yards; that the fair market value was twenty-five cents a yard; and that the plaintiff was entitled to $1,003.16, with interest from January 3, 1958.

In his supplemental report following recommittal, the auditor found that the goods sold by Plymouth were originally processed in 1955 by Plymouth on an order from Mill, which directed that the finished goods be sent to Stevens. The $1,024.21 claimed by Plymouth is an alleged balance of a running open account Stevens had with Mill, and not with Plymouth, and if there was any sum due from Stevens, which the auditor did not imply, it was owed to Mill and not to Plymouth.

The duty of the judge was to order the correct judgment on the auditor's report. *Ball* v. *Williamson*, 336 Mass. 547, 551. *Pietrazak* v. *McDermott*, 341 Mass. 107, 109. This he did not do.

The so called findings of the auditor, which he made contingent upon being within his province, were really rulings, but they were correct. The essential element of the statutory lien is an "unpaid balance of account for work, labor and materials" running from the owner of the goods to the lienor. There was no such finding. The only right of Plymouth to possession of the goods was as authorized by Stevens. When Stevens demanded their return, the refusal to return and retention by Plymouth amounted to a conversion. *Grimes* v. *Briggs,* 110 Mass. 446, 448–449. *Massachusetts Lubricant Corp.* v. *Socony-Vacuum Oil Co. Inc.* 305 Mass. 269, 271. *Reid* v. *Bacas,* 317 Mass. 240, 241. Restatement 2d: Torts, § 237. Stevens was entitled to the fair market value of the goods at the time of conversion. *Lawyers Mortgage Inv. Corp. of Boston* v. *Paramount Laundries, Inc.* 287 Mass. 357, 361.

The motion for judgment for the defendant was allowed in error. The motion for judgment for the plaintiff was denied in error.

*Exceptions sustained.*
*Judgment for the plaintiff in*
*the sum of $1,003.16, with*
*interest from January 3, 1958.*