EDITH WELCH & another[1] vs. HAROLD J. KOSASKY.

Norfolk.    October 20, 1986. — June 30, 1987.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Conversion. Trespass. Damages,* Conversion, Trespass, Attorney's fees. *Value. Practice, Civil,* Comment by judge.

Discussion of the measure of damages in conversion cases. [403-406]

In an action alleging conversion of certain valuable antiques, the judge properly awarded, as damages for diminution of their value, an amount equalling the difference between the value of the items at the time they were returned and the appreciated value they would have had then but for alterations made by the converter. [406-407]

In a civil action, damages, assessed for fees paid to an attorney for his services in recovering some but not all items stolen in a housebreak, were to be allocated on a proportional basis in the absence of more specific evidence bearing on the issue. [407-408]

In a non-jury trial, the judge's blunt remarks did not amount to error. [408]

CIVIL ACTION commenced in the Superior Court Department on December 28, 1983.

The case was heard by *Harry J. Elam, J.*

*Jeffrey M. Graeber* for the plaintiffs.

*Walter E. Palmer & Joseph B. Horodyski,* for the defendant, submitted a brief.

ARMSTRONG, J.  In 1974 a thief broke into the Welches' home in Cambridge and stole twelve lots of valuable antique silver from Mrs. Welch's collection. A month later the defendant, a physician, purchased eleven of the lots from a dealer in Brookline for $2,750, items for which Mrs. Welch had paid in excess of $40,000 during the previous twelve years. There was evidence that the Brookline dealer was involved in receiv-

---

[1] Stuart Cary Welch.

ing stolen goods, and the trial judge, who heard the case without a jury, concluded that the defendant, despite his denials, knew or should have known that the silver items he purchased from the Brookline dealer were stolen goods.

In 1981, the defendant approached Firestone and Parson, a Boston dealer, to sell the silver. There, nine of the eleven lots were purchased by an English dealer for $40,000. He left several items on consignment with Firestone and Parson for sale in this country. One of the two lots not purchased by the English dealer was a set of three James II castors that Mrs. Welch had purchased from a New York dealer in 1971 for $7,500. These were thought by the English dealer to have been altered in the Victorian period and, for that reason, to lack substantial value as collector's items. He recommended certain alterations (removal of feet and some chasing) to restore them to what he thought to be original form. The defendant authorized the changes, and the work was done in London.

One day in 1981, Mrs. Welch saw two of the stolen items in Firestone and Parson's window. (They were identified as the stolen items through photographs, descriptions, and hallmarks.) Through this discovery, over the next year or two, Mrs. Welch succeeded in recovering all of the stolen items that had been purchased by the defendant. The Welches then brought this action for conversion of all the items and for damages (by the alterations) to the James II castors.

The judge found for the Welches and awarded damages as follows: $10,000 for loss of use of the silver during its eight-year absence; $22,000 for diminution in the value of the James II castors; and $5,000 in consequential damages, respresenting in part a fee of $994.78 paid to an attorney in connection with the recovery of the castors from London, and in part a portion of a $10,000 fee paid for another attorney who performed services in seeking to locate and recover all the items stolen in the 1974 housebreak, including many works of art and antiques other than the silver items previously discussed.

The most difficult question raised by the defendant's appeal concerns the damages awarded for the diminution in value of the castors. Here the evidence conflicted sharply. The London

dealer who recommended and arranged for the alterations to the James II castors testified, as would be expected, that the alterations did not diminish their value, that it simply conformed their appearance to the original and made them more aesthetically pleasing. Another expert shared the London dealer's view that the castors had been altered previously and that the latest alterations did not affect their value. The New York dealer who had sold the castors to Mrs. Welch for $7,500 in 1971 testified that the castors were then unaltered; that they were worth $7,500 in 1971; that in 1984 (two years after their recovery), when he appraised the castors again, they would have been worth $25,000 to $30,000 in their previous conditions but that, as altered, they were worth only $3,000. (The London dealer agreed with the last figure.) As this was all the evidence bearing on the value of the castors, it is clear that the judge credited the testimony of the New York dealer and that the $22,000 damages awarded for diminution of value represents the difference (as found by the judge) between the value of the castors at the time they were returned and the value that they would have had at that time had they not been altered.

This, the defendant contends, is an improper measure of damages. He relies on the rule of damages in conversion cases, long settled in this State, and reaffirmed as recently as *George* v. *Coolidge Bank & Trust Co.,* 360 Mass. 635, 640-643 (1971), that damages are measured by the value of the converted goods at the time of the conversion, with interest from that time, and that subsequent fluctuations in the value of the converted goods neither enhance nor diminish the damages recoverable. The rule and the reasons for it are discussed in *Kennedy* v. *Whitwell,* 4 Pick. 466 (1827); *Glaspy* v. *Cabot,* 135 Mass. 435, 439-441 (1883); *Hall* v. *Paine,* 224 Mass. 62, 64-71 (1916); *Koski* v. *Haskins,* 236 Mass. 346, 349 (1920); and *Welsch* v. *Palumbo,* 321 Mass. 399, 402-404 (1947). Where, as here, the rightful owner elects to receive back the converted goods, the rule of damages, as the defendant correctly observes, it still based on value at the time of the conversion, but the converter is (1) credited with the value of the returned goods at the time of

their return, and (2) charged with damages for loss of use of the goods during the period of the detention. See *Lucas* v. *Trumbull,* 15 Gray 306, 308, 310 (1860); *Jackson* v. *Innes,* 231 Mass. 558, 560 (1919); *Lawyers Mortgage Inv. Corp.* v. *Paramount Laundries, Inc.,* 287 Mass. 357, 361-362 (1934); *George* v. *Coolidge Bank & Trust Co.* 360 Mass. at 641. The defendant thus contends that damages applicable to the castors should have been computed as follows: value of the castors in 1974, $7,500[2], less their value when returned in 1982 ($3,000) for a net reduction of $4,500.

The defendant's formulation of the rule applicable to conversion cases is correct as far as it goes, but we find nothing in the decisions cited that definitively precludes the rightful owner from recovering the value of the converted property as appreciated if an independent basis for doing so appears. Typically the owner of converted goods that appreciated after the conversion would, if the goods could be located, sue in replevin rather than trover (under the common law forms of action) and would thereby recover the appreciated goods in specie. See *Glaspy* v. *Cabot,* 135 Mass. at 439. Trover (or, later, tort for conversion) was the preferred remedy when the goods depreciated or were damaged after the conversion, because the rightful owner could elect to treat the conversion as a sale and recover the undepreciated value. For an equitable remedy, see *Fowle* v. *Ward,* 113 Mass. 548 (1873).

---

[2] The defendant also contends that the purchase price of the goods in 1971, $7,500, was too remote from the date of the conversion in 1974 to warrant a finding that the castors were worth $7,500 in 1974, and that, absent other evidence bearing on the value of the castors in 1974, the Welches have failed to prove that the castors were worth more when stolen than when returned. Thus, the defendant would restrict damages for the conversion to those for loss of use (which he does not contest). The point is not frivolous, but there was evidence (from the defendant's expert witness Goriansky) that the market for silver antiques was generally rising during the entire period in question; and from this we think it was reasonable for the judge to draw the inferences that any difference in the value of the castors between 1971 and 1974 would probably be favorable to the Welches and that treating the values as identical would probably not be prejudicial to the defendant. Absent some indication in the record that silver prices dropped significantly over that three-year period (a point that could have been developed by either party), we think it was reasonable for the judge to find that the 1974 value was the same as the purchase price.

In *Jones* v. *Hoar,* 5 Pick. 285 (1827), it was held that, when the converter sold the converted goods, the owner, at his election, could waive the conversion and sue in contract for the purchase price (assumpsit for money had and received to plaintiff's use) and could in this manner recover the value of any appreciation after the conversion. The rule of *Jones* v. *Hoar* was recognized or applied in such later cases as *Gilmore* v. *Wilbur,* 12 Pick. 120, 124 (1831); *Brown* v. *Holbrook,* 4 Gray 102, 103 (1855); *Ladd* v. *Rogers,* 11 Allen 209, 212 (1865); *Bartlett* v. *Tucker,* 104 Mass. 336, 345 (1870); *Child* v. *Boston & Fairhaven Iron Works,* 137 Mass. 516, 522 (1884); *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.,* 236 Mass. 185, 190 (1920); *Rock-Ola Mfg. Corp.* v. *Music & Television Corp.,* 339 Mass. 416, 423 (1959).

The cases which, on superficial reading, seem most strongly to support the defendant's contention (*Kennedy* v. *Whitwell,* 4 Pick. at 466, where whiskey worth thirty cents per gallon when converted was sold for forty-six cents per gallon six months later; *Koski* v. *Haskins,* 236 Mass. at 347-348, where onions found to be worth $1,822 when attached, mistakenly, by a deputy sheriff were sold a week later for $2,260; and *Welsch* v. *Palumbo,* 321 Mass. at 401, where property worth $1,500, sold to the defendant under an invalid mortgage, was resold two days later for $2,000) are seen on closer reading to turn on an infelicitous election of remedies. Contrary to the defendant's contention, the general rule of substantive law, broadly stated, is: "The conscious wrongdoer cannot make a profit and is responsible for losses." *Loring* v. *Baker,* 329 Mass. 63, 66 (1952). Under this rule the Welches' damages with respect to the castors are not necessarily capped by their value on the date of the conversion.

In 1981, prior to the alteration of the castors, the Welches had a legal right to their return in specie, although they were not then able to vindicate that right because they had not yet located the castors. The value of that right, on the judge's findings, approximated $25,000.[3] The alteration of the castors

---

[3] No contention has been made that the judge could not properly treat the appraisal by measures in 1984 as fairly reflective of the value of the castors at the time of their alteration in 1981. Cf. note 2, *supra.*

reduced their value, and correspondingly the value of the Welches' right to replevy, by $22,000. The alteration was not authorized by the Welches. As to them it was a tortious act of trespass or injury to their castors, a tort distinct from the previous eight-year detention. If the defendant had then been rightfully in possession of the castors as a bailee, his act of commissioning the unauthorized alterations would give rise to an action for damages by the Welches, either for the injury to the castors (trespass) or for their full value prior to the alteration (conversion). See Restatement (Second) of Torts §§ 217 comments f and g; 219(a) comment b 222A(1), illustration 20; 223(b); and 226, comment d, illustration 2 (1965). See also §§ 256 comment b (1965) and 927 comment d, illustration 3 (1979). It would be incongruous to hold that he escapes that liability because his possession was wrongful. The Welches may consistently seek damages for both torts. See *Bradley* v. *Brigham,* 149 Mass. 141, 144-145 (1889). The award for damage to the castors was not error.

The award of consequential damages, $5,000, is not contested as to the amount of $994.78 paid to the second attorney who arranged the return of the silver from England. The balance is contested. It represents a portion of the fee paid to the first attorney for services in attempting to locate and recover the items stolen in the housebreak. There was evidence from which it could be found that the value of all items stolen roughly approximated $200,000 and that the stolen silver represented perhaps one quarter of that total.

Assessment of damages often is based on estimate and judgment, e.g, *Piper* v. *Childs,* 290 Mass. 560, 563 (1935), so a plausible allocation, based on such evidence as may be available, will not be upset lightly. An allocation based on mere conjecture is, of course, improper. See *A. DaPrato Co.* v. *Boston,* 334 Mass. 186 (1956). In the absence of more specific evidence bearing on the allocation of the first attorney's services between the silver items and non-silver items, we think that an award on account of those services not based on proportionality is justly open to criticism as arbitrary. The award should be reduced to $2,500 (i.e., 25 percent of $10,000) for the first

attorney's services, plus the uncontested $994.78 for the second attorney, a total of $3,494.78 for all consequential damages.[4]

Kosasky's objections to the conduct of the trial judge are without merit. In particular, the judge's remarks about the obstructionism of counsel for Kosasky do not require reversal. The remarks were not entirely without justification. There was no jury to be unduly swayed by them, as there was in *Gauntlett* v. *Medical Parameters, Inc.,* 10 Mass. App. Ct. 88 (1980). The judge may have been blunt, but "bluntness is not error of law." *Harrington* v. *Boston Elev. Ry.,* 229 Mass. 421, 433 (1918).

The judgment is to be modified to reflect the reduction in consequential damages described above, and, as so modified, the judgment is affirmed.

*So ordered.*

---

[4] The Welches cite no authority for their suggestion that consequential damages might include compensation for mental anguish. Restatement (Second) of Torts § 927 comment m (1979), seems to contemplate situations where plaintiff makes out the elements of intentional infliction of emotional distress.