van Gestel, J.
This matter is before the Court on cross motions for summary judgment. The facts are relatively simple and not in dispute.
BACKGROUND
The plaintiffs are members of the Bailey family, including the parents and three adult children, and a family business, Eddie Bailey’s Garage, Inc., (collectively “the Baileys”). They owned stock in Abington Bancorp, Inc. (“Abington”).
By letter dated February 13, 2004, the Baileys were notified by the defendant Registrar and Transfer Company (“Registrar”), acting on behalf of the defendant Seacoast Financial Services Corporation (“Seacoast”), of a proposed merger between Abington and a wholly owned subsidiary of Seacoast, to be followed by a subsequent merger between Seacoast and Sovereign Bancorp, Inc. (“Sovereign”). Sovereign was to be the surviving corporation after the mergers. The end result would be Sovereign Bank’s acquisition of the Abington Savings Bank.
On March 24, 2004, the Baileys were sent a copy of a Merger Agreement by Registrar that further advised the Baileys of their option for either a tax-free exchange of approximately 6,514 shares of Abington stock for Seacoast stock or the payment of cash instead. The Baileys collectively decided that they wanted to opt for the tax-free stock exchange and called Registrar for guidance.
The Baileys further received a four-page instruction form advising them about the steps to take to make their election. There is no question that the instruction form, as well as other information, clearly advised the Baileys that the necessary election form would have to be received by Registrar “no later than 5:00 p.m., Eastern Time, on April 22, 2004.” If no election form was received by the designated deadline, the Baileys would be considered “Non-Electing Stockholders” and, as such, treated as entitled to stock or cash at Seacoast’s option. The Baileys fully understood the deadline and the consequences said to flow from failing to meet it.
The Baileys then followed the recommendations in the March 24, 2004, notice regarding “Election and Exchange of Common Stock in Abington Bancorp, Inc.” and made their “transmittal” of Abington Common Stock Certificates and related election papers “by registered mail, return receipt requested.” Although advised by Registrar, registered mail was not compelled as the only method of delivery.
The election forms and all of the duly signed Abing-ton stock certificates, properly addressed to Registrar, *184 were delivered by Kathleen Bailey to the Post Office in Abington, Massachusetts on Saturday, April 17, 2004, at 9:36 a.m.
Registrar was located in Cranford, New Jersey. The Bailey’s documents did not arrive in Registrar’s mail room in Cranford until Friday morning on April 23, 2004, at about 10:40 a.m.
It may have been the slowness of the Postal Service, or quite possibly a failure by Registrar, but not the Baileys, that resulted in the documents mailed at the Abington Post Office in Massachusetts on April 17, 2004, not arriving at Registrar’s mail room in Cranford, New Jersey, until 10:41 a.m. and 10:47 a.m. on April 23, 2004, rather than by 5:00 p.m. on April 22, 2004. See Affidavit of William A. Tatler, para. 6.
Since Registrar “picks up its incoming registered mail deliveries each morning at the Cranford, New Jersey Post Office and then brings them to [its] mail room for opening, sorting and delivering,” the Baileys’ documents were actually in the possession of Registrar’s pickup person earlier in the day than 10:41 a.m. See Tatler Affidavit, para. 7. In fact, Exhibit D to the Tatler Affidavit is said to be a copy of a kind of list of registered mail deliveries that the Cranford Post Office provides daily to Registrar. The particular list proffered as Exhibit D, near the bottom, states: “Date Printed: 04/23/2004; Time Printed 07:28.” There is nothing to suggest whether the “Time Printed” entry is a.m. or p.m. The Court does observe, however, that at the top of Exhibit D is what appears to be facsimile transfer information that reads: “POSTAL SERVICE CRANFORD NJ PHONE NO. :9087091754 Apr. 23 2004 08:40AM PI.” This Court draws the inference that the list was printed at 07:28 a.m. and sent by facsimile at 08:40 a.m., which means that the Baileys’ documents had to have arrived at the Post Office before 07:28 a.m. when the list was printed.
There is nothing in the record showing when the Cranford Post Office closed for the day on April 22, 2004, or when it opened for the day on April 23, 2004. Nor is there any evidence of when the Baileys’ documents first arrived at the Cranford Post Office.
There is nothing in the record showing when Registrar closed for the day on April 22, 2004, or when it opened for business on April 23, 2004.
There is nothing in the record showing when Registrar made its last pickup of registered mail at the Cranford Post Office on April 22, 2004.
Thus, without knowing when Registrar made its last pickup at the Post Office on April 22, 2004, there exists the very real possibility that the Baileys’ documents arrived at the Post Office after the morning pickup, but before 5:00 p.m. on April 22, 2004. Tatler says in his Affidavit that Registrar “picks up its incoming registered mail deliveries each morning.” (Emphasis added.) At oral argument on the motions, counsel for the defendants confirmed Tatler’s statement when he advised the Court that Registrar picks up its mail at the Cranford Post Office “at 6 o’clock each morning.”
Since Registrar has chosen — and presumably made arrangements therefor with the Postal Service — to pick up its mail rather than having the Postal Service deliver it, the failure of the Baileys’ documents to arrive at Registrar by 5:00 p.m. on April 22, 2004, may, in fact, be the failure of Registrar to pick up its mail at 5:01 p.m., and not the fault of either the Baileys or the Postal Service to get the mail to Registrar’s mail room.
Registrar, of course, at all times in this transaction was the agent for, and acting on behalf of Seacoast, not the Baileys. Seacoast is legally bound by its agent’s acts in furtherance of the agency. Kansallis Financial Ltd. v. Fern, 421 Mass. 659, 664-65 (1996).
The Baileys did not realize that there was any problem with the delivery time of their documents until they received a check in payment for some of their stock in June. At that time, after inquiry, they were told that they missed the April 22, 2004, 5:00 p.m. deadline and were being treated as Non-Electing Stockholders. Further, they learned that Seacoast had opted to pay the Baileys cash rather than give them a tax-free exchange of stock. This meant that the Baileys also would incur a significant capital gains tax liability-
The tax-free stock that the Baileys ultimately would have received as a result of the double merger were shares in Sovereign. They still suggest that Sovereign stock is the most appropriate remedy should they be successful in this case.
The defendants, collectively, refuse to budge on the issue, asserting that the deadline passed and the Baileys are out of luck.
There is nothing in the record demonstrating any loss or harm to any of the defendants resulting from the date and time of delivery of the Baileys’ election documents. Indeed, there is nothing in the record showing that Registrar would have acted any differently with the Baileys’ documents at 4:59 p.m. on April 22, 2004, than it did at 10:47 a.m. on April 23, 2004.
Again, on questioning by the Court at oral argument, counsel for the defendants said that his client’s sole position was the failure of the Baileys to meet the deadline and not any harm of any kind to the defendants.
DISCUSSION
“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmov-ing party, all material facts have been established and the moving parly is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972); Mass.R.Civ.P. Rule 56(c).
“All reasonable inferences drawn from the material accompanying a motion for summary judgment ‘must be viewed in the light most favorable to the party *185 opposing the motion.’ ” Curly Customs, Inc. v. Bank of Boston, N.A., 49 Mass.App.Ct. 197, 198 (2000). On the defendants’ motion, therefore, the reasonable inferences must be drawn in favor of the Baileys, and on the Baileys’ cross motion the reasonable inferences must be drawn in favor of the defendants.
Since the sole reed on which the defendants lean is the failure of the Baileys to meet the 5:00 p.m. deadline on April 22, 2004, that reed is too slender to bear the weight of the defendants’ position in light of the reasonable inference that the Baileys’ documents were at the Cranford Post Office available for pickup by Registrar by or before 5:00 p.m. on the 22nd. Registrar presented no facts that support that it was at the Post Office after early in the morning to effect its routine pickup.
Registrar has created the circumstance with the Postal Service by virtue of it picking up its mail — at least its registered mail. It is at Registrar’s request that the Postal Service does not deliver the mail to Registrar but rather holds it for Registrar at the Post Office. Registrar, however, in the instructions it gave to the Baileys set the deadline for receipt of their documents at 5:00 p.m. on April 22, 2004. Since the Baileys’ documents were at the Post Office at least before 7:28 a.m. on April 23, 2004, it is not unreasonable to assume that they arrived — and were ready for Registrar’s pickup — by the close of Post Office business on the 22nd.
Certainly, there was nothing in any of the advisories sent to the Baileys by Registrar that told them that if they chose registered mail as their method of delivery, in order to meet the 5:00 p.m. deadline on April 22, 2004, their documents had to be at the Post Office 11 hours earlier in time for the 6:00 a.m. pickup on that day. This is wholly Registrar’s doing and provides no justification for Registrar to insist that the Baileys failed to meet Registrar’s deadline.
Even if the delivery time was not before 5:00 p.m. on the 22nd, viewed in the light most favorable to the Baileys, summary judgment for the defendants is not appropriate.
At an earlier time in this case, the Court suggested that the opinion in Pierce v. Board of Appeals of Carver, 369 Mass. 804 (1976), might shed some light on this situation. The defendants do not mention Pierce in their supporting papers,[3] although the Baileys do.
In Pierce, at 807-12, Justice Kaplan discussed the question of whether a delay of two days beyond the stated time for effecting service on a defendant in an appeal from a zoning board decision justified dismissal of the action. Justice Kaplan said, “We think a negative answer is not only required by the reasoning of the Schulte case[4] but was already foreshadowed by previous decisions interpreting Sec. 21.”
There are very real legal and practical consequences to the timing of an appeal from a decision of a zoning board, quite unlike anything that exists here. Indeed, this Court has been presented with no evidence that there were any consequences whatsoever to Registrar, and those forwhom it acted, in not sorting and opening the Baileys’ election documents until fewer than 18 hours after 5:00 p.m. on April 22, 2004.
“In the absence of evidence that the [Baileys] did not intend to deviate from the strict requirements of the contract, proof was required that the deviations were immaterial — that is, so slight as to fall within the rule de minimis ...” It will be noted that “immaterial” is equated with “de minimis.” And deviations of that sort, as the quoted language states, will not bar recovery even in cases of wilful failure to perform.
Lantz v. Chandler, 340 Mass. 348, 349 (1960). See also M.F. Roach Company v. Town of Provincetown, 353 Mass. 745, 746 (1967); Lee v. Dattilo, 26 Mass.App.Ct. 185, 189-90 (1988).
Viewed, as it must be, favorably to the Baileys on the defendants’ motion, it must reasonably be inferred that they did not fail to meet the 5:00 p.m. deadline on April 22, 2004, or at least that their failure was unintended and immaterial to the matter in issue. For the foregoing reasons, the defendants have not shown their entitlement to summary judgment.
The Court next must determine whether the Baileys have failed as well. Here, the inferences and the facts must be looked at favorably to the defendants.
In assaying the Baileys’ motion, no inference will be drawn in favor of the Baileys having met the deadline. Rather, the Court will accept the evidence favorable to the defendants to the effect that the Baileys’ documents were not effectively in the hands of Registrar until 10:41 a.m. on April 23, 2004.
The defendants, however, press no facts in their favor other than the failure to meet the deadline. They proffer nothing to show any harm to them, or to show that the deviation from the deadline was a material breach by the Baileys. And they say nothing in response to the Baileys’ observation that in the documentation attached as Exhibit C to Tatter’s Affidavit a “Bank Officer” at Abington Savings Bank provided Medallion Signature Guarantees on each of the Baileys’ stock certificates before they were sent to Registrar — in other words, before the mailing at the Abington Post Office on the morning of April 17, 2004 — and, therefore, Abington was aware, or should have been, that the Baileys were exercising their option to accept the tax-free exchange of stock.
Although the Baileys carry the burden of proof at trial, there is no doubt — indeed the defendants conceded as much at oral argument — that the Baileys can prove the foregoing.
*186 There are three counts in the Baileys’ complaint: Count I for violation of G.L.c. 93A; Count II for breach of contract; and Count III for conversion.
The Court begins with Count I for c. 93A violations. There is at least some question as to whether the actions by the defendants met the “trade or commerce” requirement of c. 93A. See, e.g., First Enters., Ltd. v. Cooper, 425 Mass. 344, 347 (1997). The defendants were a transfer agent and parties to two mergers. Only the transfer agent dealt directly with the Baileys, and it did not deal with the Baileys in a truly commercial sense.
The “trade or commerce” issue notwithstanding, a further and more significant issue on the c. 93A claim is whether the Baileys have met the greater burden that the appellate courts have instructed must apply to claims like that made here. See, e.g., Madan v. Royal Indemn. Co., 26 Mass.App.Ct. 756, 763 n.7 (1989).
It has been said that in determining whether the conduct of the defendants was unfair, this Court “should . . . focus on the nature of the challenged conduct and on the purpose and effect of that conduct.” Stagecoach Transp., Inc. v. Shuttle, Inc., 50 Mass.App.Ct. 812, 817 (2001). See also Mass. Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995). More recently, however, the SJC appears to have reverted back to a more objective standard:
We have stated that “a practice or act will be unfair under G.L.c. 93A, Sec. 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Heller Fin. v. Insurance Co. ofN. Am., 410 Mass. 400, 408 (1991) ... We have stated that “(t]he purpose of G.L.c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace.” Poznik v. Massachusetts Med. Professional Ins. Ass’n, 471 Mass. 48, 53 (1994).
Morrison v. Toys “R" Us, Inc., Massachusetts, 441 Mass. 451, 457-58 (2004).
Here, the Court concludes that the actions of the defendants clearly were not “immoral, unethical, oppressive, or unscrupulous.” PMP Assocs. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). Further, the connection between the defendants and the Baileys is not clearly a “commercial relationship between consumers and business persons,” nor did the situation occur in “the marketplace.” On the present record, no violation of c. 93A is shown.
Count II is for breach of contract. On this Count, for the reasons set forth above, this Court finds a breach by the defendants.
Count III seeks relief for conversion. To prevail on a conversion claim, the Baileys must prove that the defendants exercised dominion over the personal property of the Baileys, without right, by depriving the Baileys of the tax-free stock that they elected to receive. Spooner v. Holmes, 102 Mass. 503, 506 (1869). Here, the defendants took a legitimate, albeit failed, approach to a contract, declining to deliver stock because a contractual deadline was not met. This seems not to be an act of conversion.
Further, even if there was conversion here, the Baileys have elected to receive the allegedly converted “goods” as their relief. There is, however, no showing that the stock has suffered any depreciation in value between the date of conversion and now. See, e.g., Welch v. Kosasky, 24 Mass.App.Ct. 402, 404-05 (1987); Salter v. Leventhal, 337 Mass. 679, 698-99 (1958). Thus, there will be no damages if the stock is delivered.
The words of Judge Kass can be heard here. “It would be an imposition on the parties to consign them to further exemptions in Superior Court from which the plaintiff(sl could expect to recover no more than one dollar in damages.” St. Charles v. Render, 38 Mass.App.Ct. 155, 161 (1995).
This Court has inherent authority, in managing the litigation before it, to treat motions in a manner appropriate for the responsible management of cases in order to secure the just, speedy, and inexpensive determination thereof. Mass.R.Civ.P. Rule 1. See also Beaupre v. Cliff Smith & Associates, 50 Mass.App.Ct. 480, 484 n.8 (2000). The Baileys’ cross-motion should be allowed on Count II.
The relief that the Baileys have chosen is appropriate. Specific performance of their election to receive stock rather than cash, coupled with a return of the checks sent to the Baileys or affidavit evidence of their non-existence,[5] should be ordered.
ORDER
The Defendants’ Motion for Summary Judgment is DENIED and the Plaintiffs Cross Motion for Summary judgment is ALLOWED on Count II only.

Defendants’ counsel at oral argument brushed aside Pierce as being different on its facts. He similarly suggested that the use of a “time is of the essence” clause is a quirk of real estate law and not applicable here.

 Schulte v. Director of the Division of Employment Security, 369 Mass. 74 (1975).

Which the Court was told remain uncashed.