Kern, Leila R., J.
The plaintiff, Daniel J. McNiff as Trustee of J&A Realty Trust, brought this action against Jacques Siedentopp, for conversion of property purchased by the Trust. This court heard the case jury waived and based on the weight of the credible evidence from the six witnesses and seven exhibits admitted into evidence finds the following facts and makes the following rulings of law.[2]
Findings of Fact
J&A Realty Trust was a company “generally in the real estate profession.” Stanley and Virginia McNiff were the trustees at all times relevant to the incidents underlying the Complaint. The Trust bought properties at auctions and foreclosure sales and then sold them. In addition, Stanley McNiff bought land, developed it and sold it. In May 2000, Stanley McNiff[3] reviewed a brochure describing airplanes to be auctioned at a bankruptcy sale to be held on May 20, 2000, in New Hampshire. Herman A. Berman & Sons were the auctioneers. Stanley McNiff expressed interest in purchasing a plane for the Trust’s use. Although no one involved with the Trust was a pilot, the Trust had owned airplanes in the past and would hire pilots when Stanley McNiff needed to travel for business purposes. At the time of the relevant transaction, Stanley McNiff had not owned an airplane since 1989. Before buying an airplane at the bankruptcy sale, the Trust needed someone knowledgeable to “look the plane over.”
The defendant’s mother, Natalie Siedentopp, worked for the Trust as a bookkeeper at the time. She suggested her son Jacques Siedentopp (Siedentopp), who was a pilot, could check out the plane for the Trust. Siedentopp met with Stanley McNiff to discuss the arrangement. There were others present during this conversation. The defendant was told that Stanley McNiff was interested in an airplane for a “good price,” that is, between $30,000.00 and $45,000.00. The defendant agreed to look at the planes and then attend the auction. To that end, he picked up the Trust’s blank check, signed by Stanley McNiff, before going to New Hampshire for the auction. He registered as a bidder with the J&A Realty Trust’s check and proceeded to bid on the airplane in question.
The defendant was the winning bidder for the Trust on a Piper Seneca airplane, PA-34-200T (serial No. 34-48701 IT). The amount of the bid was $59,000.00. With commission, the total for the airplane was $64,900.00. A 25% deposit was required at the time of the sale. The deposit in the amount of $14,900.00 was paid with the Trust’s check. A receipt for the deposit (Exhibit 2, page 20) indicated that the airplane was “Sold To:” Jacques Siedentopp — J&A Realty *19 Trust. The check number (#9454) indicated on the receipt was the J&A Realty Trust check (Exhibit 1) Stanley McNiff had given to Siedentopp to take to the auction.
The auctioneer for the sale was Michael Berman.[4] Although the registered bidder for this sale was the defendant, the auctioneer accepted the Trust’s check rather than cash or a bank check — usually required at a bankruptcy sale — because Michael Berman had done business with Stanley McNiff in the past. At all times, the auctioneer treated the defendant as the registered bidder for the Trust. A second check (Exhibit 3), dated May 22,2000, also drawn on the Trust’s account and signed by Stanley McNiff, was sent directly to the auctioneer to complete payment for the airplane. A Bill of Sale was prepared indicating “SOLD TO Stan McNiff, J&A Realty” with the total purchase price and marked “PAID Mike Berman (stamped signature)” (Exhibit 2, page 19).
When Stanley McNiff had learned Siedentopp’s winning bid was $59,000.00 for the airplane, which came to $64,900.00 with commission, he was very upset. He told Siedentopp to sell the airplane for the Trust. Siedentopp indicated he would do so. He also said he was coming into some money in the near future. Siedentopp said he would buy the airplane for himself if he had the funds before anyone else bought the plane.
Stanley McNiff never heard from Siedentopp again although there were numerous attempts made by Stanley McNiff and others who worked for the Trust to locate Siedentopp and the airplane. Stanley McNiff finally located Siedentopp at his home in Pepperell, MA on July 21, 2001, and accused Siedentopp of stealing the airplane. The police had to be called in.
Siedentopp in the interim had set up a company, Grand Prix Holdings Ltd., registered as a Delaware corporation. The company had no bank account, never filed a tax return with the IRS and appeared to be created for the sole purpose of taking title to and then selling the airplane in question. Siedentopp was the sole shareholder of the corporation. FAA records indicate that the bankruptcy trustee transferred title to Grand Prix Holdings, Ltd. on May 22, 2000.1 infer the transfer of title was made based on the receipt Siedentopp received at the auction when he paid the deposit with the Trust’s check (Exhibit 2, page 20). As stated above, that receipt indicated the airplane was sold to Jacques Siedentopp — J&A Realty Trust (id.).
On June 11, 2001, Siedentopp sold the airplane for $76,000.00 and title was transferred from Grand Prix Holdings to Bellefonte, Inc. The funds were wired directly into Siedentopp’s personal bank account (Exhibit 7). None of this money was turned over to the Trust. At no time was title to the airplane put in the name of Stanley McNiff or J&A Realty Trust.
Siedentopp testified that he believed the airplane was not purchased for the Trust but rather was meant to be a gift to him from Stanley McNiff. Siedentopp felt that there had been a real estate deal in the past in which some activity by a real estate broker in Stanley’s office had resulted in a loss for Siedentopp of approximately $125,000.00. While this court finds credible Siedentopp may have convinced himself of this, I conclude this was not in fact the case. There was no extrinsic evidence to support Siedentopp’s contention the airplane was meant to be a gift to him and the overwhelming weight of the evidence indicates the purchase of this airplane was for the benefit of the Trust.
Rulings of Law
1. Conversion
Conversion is the “wrongful exercise of dominion or control over the personal property of another.” Cahaly v. Benistar Prop. Exch. Trust Co., 68 Mass.App.Ct. 668, 679 (2007), further appellate review granted, 449 Mass. 1107 (July 25, 2007); accord Third Nat’l Bank of Hampden County v. Continental Ins. Co., 388 Mass. 240, 244 (1983). A defendant, otherwise in lawful possession of a chattel, is subject to liability for conversion where the defendant uses the chattel in a manner that exceeds his or her authority, and thereby seriously violates the right of another to control the use of the chattel. Cahaly, 68 Mass.App.Ct. at 679-80 (unauthorized use of clients’ funds); see also Restatement (Second) of Torts §228 (1965) (conversion by exceeding authorized use). Compare Goell v. Smith, 128 Mass. 238, 239-40 (1880) (conversion where defendant used horse in manner beyond that permitted by plaintiff), with Spooner v. Manchester, 133 Mass. 270, 275 (1882) (no conversion where defendant’s use of plaintiffs horse conformed with contract). A defendant’s wrongful assertion of ownership over the property of another subjects the defendant to liability, regardless of whether the defendant intended to deprive the true owner of the property. See Morrissett v. United States, 342 U.S. 246, 270 n.31 (1952), and cases cited (“[W]hen one assumes the rights of ownership over the property of another no proof of intent to convert is necessary” [dictum]).
In the present case, Siedentopp exercised dominion over the airplane, against the rights of the Trust, by appropriating the airplane for his own use. In fact, Siedentopp asserted ownership over the airplane by taking title to the plane in the name of an entity wholly owned by Siedentopp. Siedentopp thereafter retained possession of the plane and eventually sold it, keeping the proceeds as his own. At no point did the plaintiff authorize Siedentopp to take ownership of the airplane and, accordingly, Siedentopp is liable to the plaintiff for conversion. Siedentopp’s mistaken belief that the plane was a gift, or that he otherwise was entitled to the plane, affords him no defense to an action for conversion. Row v. Home Sav. Bank, 306 Mass. 522, 525 (1940) (“It is no defense to an action for conversion that a defendant who exercised dominion over the *20 goods did so in good faith, reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods”).
2. Damages
The case law is clear that in an action for conversion, damages are the fair market value at the time of conversion. George v. Coolidge Bank & Trust Co., 360 Mass. 635, 641 (1971); Joy Stevens of Cal. v. Plymouth Finishing Co., 355 Mass. 390, 394 (1969). Fair market value is the highest price that a normal purchaser would have paid on the date of conversion. E. Kronman, Inc. v. Bunn Bros., 265 Mass. 549, 553 (1929). The court confines the damages to the date of conversion in furtherance of the “general principle” that the damages are to “compensate the plaintiff for what he has lost.” Glaspy v. Cabot, 135 Mass. 435, 440 (1883). In so doing, the damage award is not susceptible to fluctuations in the value of the property, or to any improvements or destruction caused by the wrongful taker. Id.
The plaintiff, citing Joy Stevens, 355 Mass. at 394, contends the time of conversion was July 21, 2001, when Stanley McNiff confronted Siedentopp and accused him of stealing the Trust’s plane. At that time, the fair market value of the plane was $75,000.00, the amount Siedentopp had sold the airplane to Bellefonte, Inc.
In Joy Stevens, the Supreme Judicial Court held that the conversion did not take place until the plaintiff clothing manufacturer demanded the return of its cloth and the defendant refused. 355 Mass. at 394. Demand and refusal were prerequisites to conversion in that case because the defendant’s possession and use of the cloth was lawful and authorized up to the point of refusal. Id. at 392, 394; see Atlantic Finance Corp. v. Galvam, 311 Mass. 49, 50-51 (1942) (“A demand is a necessary preliminary to an action for conversion where the defendant’s possession is not wrongful in its inception and demand and refusal are required to put him in the position of a wrongdoer”). No demand is necessary where the defendant’s “assumption of dominion over the property was wrongful from the beginning, so that the conversion was complete without the demand.” Manhattan Clothing Co. v. Goldberg, 322 Mass. 472, 475 (1948), quoting Atlantic Finance Corp., 311 Mass. at 51.
Stanley McNiff authorized Siedentopp to sell the airplane on behalf of the Trust; he did not authorize Siedentopp to take ownership of the plane. Siedentopp deprived the Trust of both ownership and use of the airplane on May 22, 2000, when he took title to the plane in the name of a company he owned. No demand for the plane’s return was necessary for Siedentopp’s exercise of dominion over the plane to be wrongful at that time. The date of conversion was thus May 22, 2000, at which time the fair market value of the plane was its sale price of $64,900.00 — that is, the amount of the Trust’s funds Siedentopp used to purchase the plane.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter for the plaintiff in the amount of sixty-four thousand nine hundred dollars ($64,900.00), plus interest and costs as provided by law, against the defendant, Jacques Siedentopp.

 This court has now had the benefit of post-trial filings by both parties and the transcript of the trial.

 Stanley McNiff was deceased at the time the Complaint was filed on October 29, 2003.

 Mr. Berman was deceased by the time of trial. His widow, Ruth Berman, testified. In May 2000 she was present at the auction working with her husband. She is presently president of Herman A. Berman & Sons auctioneers and the keeper of the records.